SPRING, 1810.
First District.

TERRITORY
*vs.*
NUGENT.

—◆◆—

## THE TERRITORY vs. NUGENT.

Notwithstanding the affidavit be sufficiently strong, no continuance will be granted if suspicious circumstances are not accounted for.

*By the Court,* MARTIN, *J. alone.** The defendant has been indicted and found guilty of the publication of a malicious libel, and has moved for a new trial on the following grounds :

1. Because a continuance was denied him, although an affidavit sufficiently strong to entitle him to it, was made.

BECAUSE the court rejected proper, and admitted improper testimony.

I. THE affidavit stated in the usual form, the materiality of the testimony of Cadet Bayon, and

* LEWIS, J. had quitted the bench. See note p. 101.

SPRING, 1810.
First District.

TERRITORY
vs.
NUGENT.

others—the defendant's diligence to obtain their attendance—their absence, and the probable expectation of their presence at a future term—denying collusion, &c.  2.  His ill state of health, which disabled him from undergoing the fatigue of a *public examination.*  3.  The absence of another material witness whom he had not been able to subpœna in time.

IT must be admitted that this affidavit was sufficiently strong, and the court ought to, and would certainly have granted the continuance of the cause on it, if such suspicious circumstances had not existed and been presented to the court, as must have created a belief that the affidavit was made with a view to obtain a delay which could not have been of any advantage to the defendant, except in protracting the trial, and affording him an opportunity of working on the public mind by his publications.

THE defendant, in an affidavit which he had caused to be printed, at the foot of a very gross libel, (evidently circulated in town to induce a belief that he was prosecuted and hunted down as a martyr to the liberty of the press, and that the court would act corruptly on his trial,) had stated that Cadet Bayon and the other witnesses named in the affidavit, would prove most of the facts charged in the libel, for the publication of which he was indicted.  Hence the court could not but strongly suspect, as the defendant had

SPRING, 1810.
First District.

TERRITORY
*vs.*
NUGENT.

expressed in several of his publications, his opinion that the court would not admit evidence of the truth of the facts charged in the libel, that he had made the affidavit with the consciousness that the witnesses to the materiality of which he had sworn, were inadmissible, and that therefore their absence from the trial could not be injurious to his cause.

As the court must have received an impression, from this circumstance, that the defendant allowed himself great latitude in his affidavit, it was thought a duty to the territory to require that he would state in a supplemental affidavit what fact was intended to be proven by the absent witness—His refusal to do so was calculated to induce the court to believe that no injury would be done to the defendant in ruling him to trial, notwithstanding the absence of this witness.

THE two first reasons for a new trial, having appeared to the court frivolous and groundless, it was not easy to approach the last without some degree of caution. The presence of the defendant in court, in apparent high health, the attendance of several gentlemen as his counsel, confirmed the court in the belief (which had been created by the consideration of the two first parts of the affidavit) that delay only was the defendant's object. His subsequent active conduct, in the course of the trial, precludes the possibility of thinking he suffered any injury on that score.

On this part of the case, it does not appear that the court erred in denying the continuance on the affidavit produced.

II. A NEW trial is also asked, because the court rejected proper, and admitted improper evidence.

PROPER evidence is said to have been rejected, inasmuch as witnesses were not admitted to prove the truth of the facts contained in the libel.

*The truth of a libel not admissible evidence.*

IN criminal prosecutions, in the courts of this territory, the rules of evidence are, by an act of the Legislature, declared to be those of the common law of England. 1805, *c.* 50, § 33.

THE truth of a libel is not admissible evidence : neither is the bad reputation of the person libelled. 2 *M'Nally's Ev.* 649. *Hawk. P. C. ca.* 73. 3 *Bac.* 495.

IT is immaterial with respect to the essence of the libel, whether the matter be true or false, since the provocation, and not the falsity, is the thing to be punished, 4 *Blackst.* 150. *Wood's Inst.* 424. For in a settled state of government, the party grieved ought to complain for every injury done to him, in the ordinary course of law, and not by any means to revenge himself by the odious course of libelling or otherwise. The case *de libellis famosis.* 5 *Co.* 125. *b.*

A LIBEL, though the contents be true, is not to be justified. *Hob.* 253. It is punishable though the matter be true. *Moor.* 627. It is a libel,

SPRING, 1810.
First District.

TERRITORY
vs.
NUGENT.

though it be true, for it tends to private quarrels and revenge. 4 *Com.* 150.

A MAN may justify in an action for words or a libel, otherwise in an indictment. *per Holt, C. J.* 3 *Salk.* 326, 11 *Mo.* 99.

AND yet, although the law allows the party to justify in an action for words *spoken*, it does not for *written* scandal. 3 *Bac.* 495.

AFTER so many concurring authorities from the English elementary writers and reporters, it must be concluded that, according to the rules of the common law, the court could not have allowed the defendant in this case to have introduced witnesses to prove the truth of the facts charged in the libel. But it is contended that the people of this country have a constitutional right to the liberty of the press, and this principle of the common law, being irreconcileable with this right, is not binding on the court, although recognised by the act of the Legislature.

CONSTITUTIONAL, as well as all other rights, are to be exercised, so as they work no injury to others. *Sic utere tuo ne alios lædas.* Our fellow citizens in the states of Connecticut, New-York and Virginia, are in as full possession of this right as we. Yet their jurists recognise the common law principle complained of, in its full extent. In 2 *Swift's system, p.* 346, the distinction between the right of giving the truth in evidence in criminal prosecutions, and in actions for defamation, is laid down as the law of Con-

necticut, although the author informs us there has been no *express* recognition of it. The Supreme Court of the State of New-York admitted the principle in the case of *the people* vs. *Croswell*, and Judge Tucker, in a work avowedly written with the view of pointing out the discrepancies of the laws of Virginia from the common law, although he warns the student of the necessity of considering the reasonableness of the doctrine established in 5 *Co*. 125, does not hint at any modification of it, peculiar to the American States. 4 *Tucker's Bl.* 150.

In Pennsylvania, the principle was abrogated in 1809, by an act of the Legislature. *Binney* 601—in North Carolina in 1802, *c.* 8, *p.* 215, and this is negative evidence that it was enforced in those States before those periods.

If any doubt remained, the absence of any case, in which it was overruled in England, or such of the United States, in which no legal provision exists, would be conclusive, especially when it is considered that the French and Spanish laws, which were heretofore in force here, are conformable in this respect to the common law of England.

*Mais quelque vraie que soit l'injure, lorsqu'elle est faite ailleurs qu'en justice, dans le dessein d'injurier, elle est punissable, quand même elle ferait connaître un crime dont il conviendrait de tirer vengeance pour l'intérêt public.* 31 Repert. Un. et Rais. de Jurisp. *Verbo Injure, p.* 318.

P

SPRING, 1810.
First District.

TERRITORY
vs.
NUGENT.

*Celui qui a écrit ou lu un libelle . . . . ne sera pas reçu a demander a faire preuve des faits contenus dans le libelle.*   Salviat, Jurisp. Parl. Bord 350.

*Ca maguer quiera probar aquel que fizo la cantiga, o rima, o dictado malo, que es verdad aquel mal o denuesto que dixo de aquel contra quien lo fizo, non deue ser oydo, nin le deuen cabar la prueba.*   7 *Part. tit.* 9. *ley* 3.

FROM all these authorities, it appears to me safe to conclude, that in refusing to allow witnesses to be examined as to the truth of the facts charged in the libel, the court did not reject proper evidence.

IT is next complained that improper evidence has been admitted.   The fact is, that a witness introduced by the Attorney General, being asked whether he knew who was the author of the libel in the indictment, answered he could not answer this question with safety.   The Attorney General then asked him whether it was not within his knowledge whether the defendant was the author of it, he hesitated, and an appeal was made to the court whether the question was proper, the witness contending he might criminate himself by answering it.   On the part of the defendant, the case of Willie, one of the witnesses on the trial of Burr, was read, in which Chief Justice Marshal said, that a witness is the sole judge whether he will, or will not, be committed by answering a question put to him—but it appears that the Chief Justice in this very instance compelled

the witness to answer. 1 *Burr's trial, p.* 245. In SPRING, 1810.
examining the abstract proposition attributed to First District.
the Chief Justice, it seems an immense latitude
is left to the witnesses, if when a question is put
to him, the answer to which cannot implicate
him, he may screen the defendant, by refusing
to answer, alleging that he may not do so with-
out danger—an allegation to which common
sense may give the lie, and in which he cannot
be contradicted. The witness answered he knew
the defendant was the author of the libel—he
had acknowledged it to him. In reviewing anew
the decision of the court, it does not appear how
this answer could have criminated the witness,
and the conclusion follows that, in this respect,
no improper testimony was permitted to go to
the jury.

TERRITORY<br>vs.<br>NUGENT.

### NEW TRIAL REFUSED.

THE defendant's counsel now moved in arrest
of judgment, that it did not appear by the indict-
ment that the offence was committed within the
jurisdiction of the court. The district was men-
tioned in the margin, and the offence was stated
to have been committed in the city of New-Or-
leans, without adding the words *in the district
aforesaid,* nor was the district referred to in any
other manner.

THEY said that the true venue, by the laws
of the territory, is the district. *The city of
New-Orleans* is not of itself a sufficient descrip-
tion of the place. The Grand Jury must be of

the proper district and vicinage. They commented on the excellence of the trial by Jury, and the necessity of a strict adherence to rigid rules in criminal cases. It must appear on the face of the indictment, that the court and jury have jurisdiction 2 *Hawk.* 303, and, as to the necessity of the inserting the venue, they cited 2 *Hale* 180.

THE Attorney General (Grymes) in reply cited 3 *Bacon* 220, where it is stated that when the county is in the margin, it will be implied that the town in the indictment is within it : but he relied mostly on the 33d section of the act of 1805, *c.* 5. which provides " that the forms of indict-" ments (divested however of unnecessary pro-" lixity).........changing what ought to be chang-" ed, shall, except as by this act is provided, be " according to the said common law."

*By the Court.* I believe the authorities cited by the defendant's counsel from Hawkins and Hale are conclusive. There are a number of others. The Court held so in the case of *Rex* vs. *Burridge,* 3 *P. W.* 496, and relied on the cases of *Parker* vs. *Ladd.* 1 *Sidney* 345 and *Rex* vs. *Fossett,* 12 *W.* 3. *Easter Term. B. R.* I have known the same principle determined in the Superior Court of North Carolina in the case of the *State* vs. *Adams,* for murder, at Newbern, in March term 1793, *Martin's notes,* 30 ; so that there can be but little doubt, unless the act of the Legislature of the territory has altered the common law in this respect.

INDICTMENTS by this act must be as at common law, but divested of unnecessary prolixity. But the defendant contends that in the present case there is a total omission of a material circumstance, not that it is too succinctly detailed. In the case in North Carolina, an argument was attempted to be drawn, in order to excuse the omission, from the niceties spoken of by Blackstone as condemned by Hale, but Williams, J. observed these were niceties of another kind. After all, it deserves great consideration, before the court should determine that they will consider as unnecessary any circumstance, which the judges who have preceded them, have held *essential* to the sufficiency of the indictment: whether the judgments of the individuals or individual who fills the bench, is to be the sole rule of decision, in criminal cases. I cannot alone, unaided nnd unchecked by any of my brothers, take on myself to go so far.

CURIA ADVISARE VULT. *Post* 169.