(66 South. 364)

No. 20687.

STATE v. WALTERS.

(June 29, 1914. On Rehearing, Nov. 16, 1914.)

*(Syllabus by the Court.)*

1. TITLE AND SUBJECT-MATTER OF STATUTES —KIDNAPPING.

     Act No. 271 of 1910, relative to the crime of kidnapping, is unconstitutional, because its purpose to amend and re-enact Act No. 86 of 1908 is not expressed in its title, and because it amends section 806 of the Revised Statutes of 1870, relative to the kidnapping of children of tender age, without mention of such a purpose either in the body or title of the act.

On Rehearing.

2. STATUTES (§§ 118, 135*)—TITLE AND SUBJECT-MATTER—AMENDMENT.

     Under the provisions of article 32 of the Constitution of Louisiana, the Legislature may amend a repealed statute by the same act in which the repealed law is revived and re-enact-

ed, provided the object of the amending and re-enacting statute be expressed in its title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 158–160, 202, 203; Dec. Dig. §§ 118, 135.*]

## 3. WITNESSES (§ 331½*) — CROSS-EXAMINATION OF ACCUSED.

As the issues in a criminal trial must be confined within reasonable bounds, the state's attorney has no right to cross-examine the defendant on irrelevant matters, for the purpose of impeaching him or contradicting his testimony as to such immaterial facts. But this rule does not forbid the prosecuting attorney to introduce evidence to contradict the testimony given by the defendant voluntarily upon any issue which he has brought into the case.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 331½.*]

## 4. WITNESSES (§ 267*) — CROSS-EXAMINATION —LIMITATION.

It is the right and duty of the district judge to put some limit upon a defendant's right of cross-examination of the state's witnesses in a criminal trial.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 923–930; Dec. Dig. § 267.*]

## 5. CRIMINAL LAW (§§ 59, 792*)—INDICTMENT AND INFORMATION (§ 174*)—"PRINCIPAL"— INSTRUCTIONS—VARIANCE.

One who is indicted as a principal cannot be legally convicted as an accessory before the fact. Persons who are not actually or constructively present at the commission of a crime are not principals. Therefore it is an error for the district judge to instruct the jury that all persons aiding or abetting the commission of a crime are principals.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 71, 73, 74, 76–81, 1818–1820; Dec. Dig. §§ 59, 792;* Indictment and Information, Cent. Dig. §§ 540–543; Dec. Dig. § 174.*]

For other definitions, see Words and Phrases, First and Second Series, Principal.]

## 6. CRIMINAL LAW (§ 854*)—JURY—DELIBERATIONS IN CAPITAL CASE—SEPARATION.

To take the jurors from the courthouse to a hotel and lodge them in six separate rooms all night, two in each room, while the deputy sheriff sleeps in the hall, is not a compliance with the requirement of the law that the jurors must not be separated at any time during the trial of a capital case, or after the judge has delivered his charge in any criminal trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2039–2047; Dec. Dig. § 854.*]

Land, J., dissenting.

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

William C. Walters was convicted of kidnapping, and appeals. Reversed on rehearing, and remanded for new trial.

Dale & Rawls, of Columbia, Miss., and E. B. Dubuisson, of Opelousas, for appellant. R. G. Pleasant, Atty. Gen., and R. Lee Garland, Dist. Atty., E. P. Veazie, and John W. Lewis, all of Opelousas, and G. A. Gondran, of New Orleans, for the State.

LAND, J. The defendant was charged with kidnapping a male child less than 14 years of age, under Act 271 of 1910, was found guilty without capital punishment by the jury, and sentenced to the state penitentiary for the term of his natural life.

Defendant has appealed, and relies for reversal on six bills of exceptions, which we will consider in reverse order. Bill No. 6 was taken to the overruling of the motion in arrest of judgment.

[1] The argument of defendant's counsel in support of the motion reads as follows:

"Motion in Arrest of Judgment.

"The motion in arrest of judgment is based upon the alleged unconstitutionality of the statute under which defendant was prosecuted and convicted.

"Under the Revised Statutes of 1870, there are two sections dealing with the crime of kidnapping. They are sections 805 and 806, and read as follows:

"'Sec. 805. Whoever shall forcibly seize and carry out of this state, or from one part of this state to another, or shall imprison or secrete, any person without authority of law; and all persons aiding, advising and abetting therein, on conviction, shall be imprisoned at hard labor or otherwise, for a period not exceeding five years, at the discretion of the court.

"'Sec. 806. Whoever shall take, with or without his consent, any male child under the age of fourteen years, or any female child under the age of twelve years, from the custody of his or her parent, tutor or guardian, without authority of law, and all persons aiding, advising or abetting therein, on conviction, shall be imprisoned, at hard labor or otherwise, for a period not exceeding five years.'

"Section 805 was amended and re-enacted by Act 86 of 1908, page 105. The only substantial change was the increasing of the maximum penalty from five to twenty years imprisonment with or without hard labor.

"In 1910 another act was passed. It was designated as No. 271, and is to be found at page 470 of the official acts for that year. It reads as follows:

" 'An act to amend and re-enact section 805 of the Revised Statutes of Louisiana, to define the crime of kidnapping, and to prescribe a penalty therefor.

" 'Section 1. Be it enacted by the General Assembly of the state of Louisiana, that Act 86 of the Acts of the General Assembly for the year 1908, amending and re-enacting section 805 of the Revised Statutes of 1870, be amended and re-enacted so as to read as follows:

" ' "Sec. 805. That whoever shall forcibly seize, take and carry out of this state, or from any part of this state to another, any male child under the age of fourteen years, or any female child under the age of twelve years, from the custody of his or her parent or parents, tutor or guardian, without authority of law, and all persons aiding, advising or abetting therein, shall be guilty of the crime of kidnapping, and on conviction thereof shall suffer death."

" 'Sec. 2. Be it further enacted, etc., that all laws or parts of laws contrary to or in conflict herewith be, and the same are hereby, repealed.'

"Article 31 of the Constitution reads as follows:

" 'Art. 31. Every law enacted by the General Assembly shall embrace but one object, and that shall be expressed in its title.'

"The motion in arrest of judgment alleges that said Act 271 of 1910 violates said article of the Constitution in three particulars, to wit:

"First. Because it purports to amend section 805 of the Revised Statutes, when said section had already been amended, and no reference is made to the amendatory act in the title.

"Second. Because the title of the act is incorrect and misleading; and

"Third. Because it incorporates among its provisions portions of section 806 of the Revised Statutes.

### "First.

"It is important to consider article 32 of the Constitution in connection with this point. Said article reads as follows:

" 'Art. 32. No law shall be revived, or amended by reference to title; but in such cases the act revived, or section as amended, shall be re-enacted and published at length.'

"Under this constitutional provision, whenever a statute is amended and re-enacted, the original is blotted out and extinguished and ceases to exist. Hence, in such case, when it is sought to amend and re-enact the new law, or the original statute, as amended and re-enacted, article 31 of the Constitution is not complied with when the title of the second amendatory act refers to the original and repealed statute as the one which it is intended to amend and re-enact.

"In Mouton v. City of Lafayette, 130 La. 1064, 58 South. 883, the point involved was this: The General Assembly at the regular session of 1910 passed two acts purporting to amend and re-enact section 2 of Act 30 of the Extra Session of 1877, as amended by Act 32 of 1902. They were Acts 128 and 270 of 1910. The latter made no reference to the former, and it was held to violate Articles 31 and 32 of the Constitution.

"In that case the court said:

" 'And plaintiff has invoked articles 31 and 32 of the Constitution, * * * which apply to the case, since a title, declaring the object of an act to be to amend and re-enact one statute, can [cannot] be said to declare such object to be to amend and re-enact another and later statute.'

"This language applies with full force to the case at bar and is decisive of it.

"In considering the point here made, decisions from other states should be received with great caution. Thus in 36 Cyc. 1055, it is said:

" 'An amendatory statute, which attempts to amend a section which has already been amended and repealed by implication, is void. But, *in the absence of constitutional prohibition*, the better rule has been held to be that an amendatory statute will be upheld, although it purports to amend a statute already amended, or which for any reason has been declared invalid.' (Our italics.)

"Note that in the absence of constitutional prohibition some courts hold that an amendatory statute which attempts to amend a section which has already been amended and repealed by implication, is void; but, in the opinion of the author of the Cyc. article, the better rule under such circumstances is that the amendatory statute should be upheld. Whatever may be the merits of that controversy, with us the question is settled in favor of the first view by article 31 of the Constitution. Mouton Case, supra.

### "Second.

"Title of Act Incorrect and Misleading.

"It reads as follows:

" 'An act to amend and re-enact section 805 of the Revised Statutes of Louisiana, to define the crime of kidnapping, and to prescribe a penalty therefor.'

"The body of the act purports to amend and re-enact said section as amended and re-enacted by Act 86 of 1908.

"Now, said section as thus amended provides:

" 'Whoever shall forcibly seize and carry out of this state, or from one part of this state to another, or shall imprison or secrete any person without authority of law,' etc.

"Act 271 of 1910 provides:

" 'Whosoever shall forcibly seize, take and carry out of this state, or from any part of this state to another, any male child under the age

of fourteen years, or any female child under the age of twelve years, from the custody of his or her parent or parents, tutor or guardian without authority of law,' etc.

"A comparison of the two statutes will show that the latter drops the clause 'or shall imprison or secrete,' contained in the former, and substitutes 'any male child under the age of fourteen years, or any female child under the age of twelve years, from the custody of his or her parent or parents, tutor or guardian,' for the 'any person' of the former. The result of this, if the statute were constitutional, would be that after its adoption it would no longer be a crime to 'imprison or secrete any person without authority of law,' or to forcibly seize and carry out of this state, or from any part of this state to another, any male child not less than 14 years of age, or any female child not less than 12 years of age, from the custody of his or her parent or parents, tutor or guardian, without authority of law.

"A further comparison of the two acts will show that under the former the penalty was imprisonment, 'at hard labor or otherwise, for a period not exceeding twenty years, at the discretion of the court,' whereas under the latter it is death. Hence, as stated in our motion in arrest of judgment, the title of the latter act should have been:

"'An act to abolish the crime of kidnapping as to all persons except male children less than fourteen years of age, and female children less than twelve years of age, and to make the penalty for the kidnapping of such children death.'

"Jones must have had such a title in mind when, in Statute Law Making, after discussing titles too broad and too narrow under constitutional provisions, such as article 31 of our Constitution, he says at page 74:

"'The inclusion of misleading statements as to the scope of the bill, *or failure to cover its real scope*, puts the whole bill in a doubtful position before the courts.' (Our italics.)

"Third.

"Section 805 of the Revised Statutes made it a crime to kidnap any person under the circumstances stated in that section, while section 806 made it a crime to kidnap certain designated persons under other and different circumstances. Now, Act 271 of 1910, under the guise of amending and re-enacting section 805, makes it a crime to kidnap the particular persons designated in section 806 under some of the circumstances previously designated in section 805.

"The act, therefore, suppresses a part of section 805, and in lieu of a part of that which was suppressed supplies a portion of section 806. This was an attempt to make a law consisting of parts of two sections under the guise of amending one. This, under article 31 of the Constitution, could not be done.

"In State v. Sugar Refining Co., 106 La. 553, 31 South. 181, it was held that a statute the object of which it was declared in the title was to amend and re-enact section 10 of a prior statute violated said article of the Constitution when it incorporated in the new section 10 parts of the provisions of section 11 of the prior statute.

"In Wisner's Curator v. Mayor and City Council of Monroe, 25 La. Ann. 598, the syllabus reads in part as follows:

"'Under a title purporting to amend only the first section of a statute, it is not competent to amend other sections of said act. Such amendments, not being covered by the title, are null and void, because made in violation of article 114 of the Constitution.'

"The Constitution referred to is that of 1868, and article 114 thereof reads:

"'Every law shall express its object or objects in its title.'

"This provision, it will be observed, is different from article 31 of the Constitutions of 1898 and 1913, or article 29 of the Constitution of 1879, article 118 of 1864, article 115 of 1852, and article 118 of 1845. The provisions of the various Constitutions cited provide, not only that the object of the act shall be stated in the title, but that the act shall not have more than one object. They are, therefore, more restrictive on the General Assembly than article 114 of the Constitution of 1868, which merely provided that the object or objects of every law should be expressed in its title. Yet, even under that more liberal constitutional provision, the court held in the Wisner Case, supra, that a statute was null and void which, under a title purporting to amend and re-enact one section of a prior act, went further and attempted to amend other sections of said act.

"It seems clear, therefore, that when Act 271 of 1910 attempted to amend both sections 805 and 806 under a title purporting to amend section 805 only, it ran counter to article 31 of the Constitution of 1898, which was then in force, and is therefore null and void.

"The statute itself is absurd. This is a harsh term, but, if anything, it is not strong enough to fittingly characterize a statute which imposes the death penalty for kidnapping a male child less than 14 years of age, or a female child less than 12 years of age, but imposes no penalty at all, and wipes out an existing penalty, for kidnapping any male person not less than 14 years of age, or any female person not less than 12 years of age.

"The court should have no compunctions whatever in declaring the act unconstitutional, since the effect would be to leave the original statutes unaffected. Eberle v. Michigan, 232 U. S. 700, 34 Sup. Ct. 464, 58 L. Ed. 803.

"Should the court decide that Act 271 of 1910 is unconstitutional, as it no doubt will, the defendant should be discharged. This, of course, would leave him subject to reindictment under the Revised Statutes, section 806, or section 805, as amended by Act 86 of 1908. Constitution, art. 9.

"We do not think that the indictment in this case could possibly be held to be a good and valid indictment under either section 805 of

the Revised Statutes, as amended by Act 86 of 1908, or under section 806; but, even if it could, the conviction of defendant in this case could not be upheld under those laws, because the penalty under them is imprisonment with or without hard labor. The tribunal to try such offenses is a jury of 5, whereas defendant was tried for a capital offense, the tribunal for the trial of which is a jury of 12. Constitution, art. 116.

"Now, since defendant was tried and convicted by a jury of 12 (Tr. pp. 2, 11, 20, 143), under Act 271 of 1910, he was tried and convicted by a tribunal which had no jurisdiction, if said act is unconstitutional, and the verdict, as well as the sentence, would necessarily have to be set aside."

The foregoing argument presents, not only an able exposition of the constitutional questions involved in the decision of this case, but also contains a just criticism of the provisions of Act 271 of 1910, as repealing all the prior legislation against kidnapping, and limiting the offense to the forcible seizure and carrying out of the state, etc., of boys under 14 years of age and girls under the age of 12 years.

Act 271 of 1910 has the same title as Act 86 of 1908. We cannot conceive how the title of an act passed in 1908 can express the object or purpose of an act amendatory thereof, passed in 1910.

The object or purpose of Act 271 of 1910 is thus expressed in section 1:

"Be it enacted by the General Assembly of the state of Louisiana, that Act 86 of the Acts of the General Assembly for the year 1908, amending and re-enacting section 805 of the Revised Statutes of 1870, be amended and re-enacted so as to read as follows."

This sole object or purpose is not expressed in the title of the act, and it is therefore manifest that Act 271 of 1910 violates article 31 of the Constitution, which imperatively requires that the object of an act "shall be expressed in its title."

If Act 271 of 1910 had ignored Act 86 of 1908, and had amended and re-enacted section 805 of the Revised Statutes, the Alabama cases cited by counsel for the state

might apply. The gist of those cases is stated in plaintiff's brief as follows:

"In Alabama, where a constitutional provision exists similar to our article 31, it has been held as settled that the Legislature may amend an original act or statute which has been amended, and disregard an intervening amendatory act."

To the same effect is State National Bank v. City of Memphis, 116 Tenn. 641, 94 S. W. 606, 7 L. R. A. (N. S.) 663, 8 Ann. Cas. 22.

But Mouton v. City of Lafayette, 130 La. 1064, 58 South. 883, holds that, where the original law has been *amended and re-enacted at length*, it is merged in the later act. The same doctrine is held in the recent case of State of Louisiana v. W. C. Nelson, 65 South. 893,[1] No. 20475 of the docket of this court. The logical result is that the old law, having ceased to exist, cannot be amended. But none of the cases cited supra apply to Act 271 of 1910, where the object or purpose to amend a *particular* statute is not expressed in the title.

A comparison of the provisions of Act 271 of 1910 with those of sections 805 and 806 of the Revised Statutes will show that the framers of that act amended both sections, without mention of section 806 either in the body or title of the act.

Section 805 is a general law against the forcible kidnapping of any person. Section 806 is a special law against the *taking* of, with or without his consent, "any male child under the age of fourteen years or any female child under the age of twelve years, from the custody of his or her parent, tutor or guardian without authority of law."

Act 271 of 1910 amends and re-enacts section 805, so as to make the crime of kidnapping punishable *only* when perpetrated against children of tender years, as set forth in section 806. In fact, Act 271 of 1910 contains a mélange of some of the provisions of

[1]Ante, p. 678.

both sections, with a substitution of the death penalty for imprisonment at hard labor. As Act 271 amends section 806, and no such purpose or object is expressed either in the body or title of the act, the statute violates article 31 of the Constitution.

It is therefore ordered that Act No. 271 of 1910 be declared unconstitutional, null, and void; and it is further ordered that the verdict and sentence against the accused be set aside, and that he be discharged from further prosecution under said statute.

### On Rehearing.

O'NIELL, J. The defendant contends, in his motion in arrest of judgment, that the Act 271 of 1910, under which he was convicted of the crime of kidnapping, violates article 31 of the Constitution of Louisiana, which provides:

"Every law enacted by the General Assembly shall embrace but one object, and that shall be expressed in its title."

Two original sections of the Revised Statutes of 1870 defined and denounced two different and distinct crimes, neither of which was called kidnapping, viz.:

"Sec. 805. Whoever shall forcibly seize and carry out of this state, or from one part of this state to another, or shall imprison or secrete any person without authority of law, and all persons aiding, advising and abetting therein, on conviction, shall be imprisoned, at hard labor or otherwise, for a period not exceeding five years, at the discretion of the court.

"Sec. 806. Whoever shall take, with or without his consent, any male child under the age of fourteen years, or any female child under the age of twelve years, from the custody of his or her parent, tutor or guardian, without authority of law, and all persons aiding, advising or abetting therein, on conviction, shall be imprisoned at hard labor or otherwise, for a period not exceeding five years."

The Legislature attempted, by the Act 86 of 1908, to amend section 805 of the Revised Statutes, so as to define the crime of kidnapping and increase the maximum term of imprisonment to 20 years, in an independent statute, viz.:

"Act No. 86.

"An act to amend and re-enact section 805 of the Revised Statutes of Louisiana, to define the crime of kidnapping and to prescribe a penalty therefor.

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that whoever shall forcibly seize and carry out of this state, or from one part of this state to another, or shall imprison or secrete, any person, without authority of law, and all persons aiding, advising and abetting therein, shall be guilty of the crime of kidnapping, and on conviction thereof shall be imprisoned at hard labor or otherwise, for a period not exceeding twenty years, at the discretion of the court.

"Sec. 2. Be it further enacted, etc., that all laws or parts of laws in conflict herewith be, and the same are hereby, repealed."

Although the first part of the title of the Act 86 of 1908, declared it to be "An act to amend and re-enact section 805 of the Revised Statutes of Louisiana," the act did not in terms declare the section amended or re-enacted. Section 805 of the Revised Statutes is not mentioned in the text of the so-called amending and re-enacting statute. But by this independent legislation the act carried out the object stated in the latter part of its title; id est, " to define the crime of kidnapping and to prescribe a penalty therefor." And, by the repealing sentence in the second section of the Act 86 of 1908, section 805 of the Revised Statutes was entirely done away with, and it was superseded by the new statute.

Therefore, when the Legislature again attempted, by the Act 271 of 1910, to amend and re-enact section 805 of the Revised Statutes, which had been repealed by the Act 86 of 1908, the two existing laws upon the subject were: (1) Section 806 of the Revised Statutes, denouncing as a crime, punishable by imprisonment for a term not exceeding five years, the taking of a boy under the age of 14 years or of a girl under the age of 12 years, from his or her parent, tutor, or guardian, without authority of law, whether with or without the child's consent; and (2) the crime of kidnapping, defined by the Act 86

of 1908 as the forcible seizing and carrying out of this state or from one part of the state to another, or the unlawful imprisoning or secreting, of any person, regardless of age or sex.

The title of the Act 271 of 1910 is precisely the same as that of the Act 86 of 1908. The statute in full is as follows:

"Act No. 271.

"An act to amend and re-enact section 805 of the Revised Statutes of Louisiana, to define the crime of kidnapping and to prescribe a penalty therefor.

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that Act 86 of the Acts of the General Assembly for the year 1908 amending and re-enacting section 805 of the Revised Statutes of 1870, be amended and re-enacted so as to read as follows:

"'Sec. 805. That whosoever shall forcibly seize, take and carry out of this state or from any part of this state to another, any male child under the age of fourteen years, or any female child under the age of twelve years, from the custody of his or her parent or parents, tutor or guardian without authority of law, and all persons aiding, advising or abetting therein, shall be guilty of the crime of kidnapping and on conviction thereof, shall suffer death.'

"Sec. 2. Be it further enacted, etc., that all laws or parts of laws contrary to and in conflict herewith be, and the same are hereby, repealed."

Although the first section of the Act of 1910 declares the amending Act of 1908 to be amended and re-enacted, the statute has carried out the object expressed in the first part of its title; id est, "to amend and re-enact section 805 of the Revised Statutes of Louisiana." As amended by the Act of 1910, section 805 was re-enacted, revived, and put back into place with its original number in the Revised Statutes. This was done, not by declaring section 805 amended and re-enacted, but by declaring the Act of 1908 to be amended and re-enacted so as to read as if it had been originally adopted in the form of an amendment of the section of the Revised Statutes. In the declaration in the Act of 1910, that the Act of 1908 is amended and re-enacted, it is described as "amending and re-enacting section 805 of the Revised Stat-

utes of Louisiana," although, as a matter of fact, and as we have already observed, the Act of 1908 was not in the form of an amendment and re-enactment of the section of the Revised Statutes, but was a new and independent statute, repealing and superseding section 805 of the Revised Statutes. The Act of 1908 is not referred to in the title of the Act of 1910.

Every word in section 806 of the Revised Statutes has been copied into the Act of 1910, except the expression, "with or without his consent," and except also the penalty —i. e., "be imprisoned, at hard labor or otherwise, for a period not exceeding five years" —for which was substituted, "suffer death." To illustrate this by a convenient method of comparison, we have italicized the words in the Act of 1910 which were copied from section 806 of the Revised Statutes; and the words in italics show how much of section 806 of the Revised Statutes was copied into the Act of 1910, viz.:

"*Sec.* 805. *That whosoever shall* forcibly seize, *take* and carry out of this state, or from any part of this state to another, *any male child under the age of fourteen years, or any female child under the age of twelve years, from the custody of his or her parent* or parents, *tutor or guardian without authority of law, and all persons aiding, advising or abetting therein,* shall be guilty of the crime of kidnapping, and, *on conviction thereof, shall* suffer death."

By reading only the words in italics, in the above copy of section 805 of the Revised Statutes (as amended by the Act of 1910), by inserting after *take, with or without his consent,* and substituting for the last two words, "suffer death," after the word "shall," the words "*be imprisoned, at hard labor or otherwise, for a period not exceeding five years,*" we have an exact reproduction of section 806 of the Revised Statutes.

Whether the Act of 1910 be regarded as an amendment and re-enactment of section 805 of the Revised Statutes, which had been repealed and superseded by the Act of 1908,

or as an amendment and re-enactment of the then existing statute of 1908, the statute of 1910 has wrought some material changes in the law upon the subject of kidnapping. It repealed the law against the kidnapping of a man or woman or a boy of 14 or girl of 12 years of age, and it omitted from the crime the unlawful imprisoning or secreting of any person, which crimes were theretofore denounced and made punishable by imprisonment for a term not exceeding 5 years under section 805 of the Revised Statutes, and 20 years under the Act of 1908. And it increased the punishment to the death penalty for forcibly seizing and taking a boy under the age of 14 or a girl under the age of 12 years from the custody of his or her parent or parents, tutor or guardian, without authority of law, and carrying the child out of the state or from one part of the state to another. By combining the aggravating circumstances mentioned in both of the existing statutes, in the form of an amendment of one of the statutes, the Act of 1910 defined a new crime, punishable by death. But the Act of 1910 did not repeal or amend section 806 of the Revised Statutes, which denounces as a crime, punishable by imprisonment for a term not exceeding five years, the taking of a boy under the age of 14 years, or of a girl under the age of 12 years, from the custody of his or her parent, tutor, or guardian, with or without the child's consent, without authority of law, but without forcibly seizing and carrying the child out of the state, or from one part of the state to another.

The contentions made in the motion in arrest of judgment are that the Act of 1910 violates article 31 of the Constitution of Louisiana in three particulars, and for these three reasons, viz.:

First. Because section 805 of the Revised Statutes, which the Legislature attempted to amend by the Act of 1910, was already amended and re-enacted in the Act 86 of 1908, of which no mention is made in the title of the Act of 1910.

Second. Because the title of the Act of 1910 is incorrect and misleading, and does not express the true object of the act; and

Third. Because, under the guise of amending section 805 of the Revised Statutes, the Legislature has incorporated among the provisions of the Act of 1910 portions of section 806 of the Revised Statutes, and has actually sought to amend the section 806.

## Opinion.

The first cause of nullity alleged may be subdivided into two objections: (a) That the statute of 1910 is invalid and inoperative, because it is an attempt to amend a statute which was already amended and re-enacted; and (b) that the true object of the Act of 1910, to amend Act 86 of 1908, is not expressed in its title. And the first of these objections might have been expressed more seriously than it is stated in the pleading or in the briefs, because, as we have already observed, the Act 86 of 1908 did not, in its text, declare the section 805 of the Revised Statutes amended or re-enacted, but it is in the form of a new and independent statute, repealing and superseding section 805 of the Revised Statutes. This is the light in which we view the statute of 1908, in deciding the defendant's first objection to the Act of 1910.

Article 31 of the Constitution imposes upon the Legislature only two restrictions: (1) That a statute shall embrace only one object; and (2) that the object must be expressed in its title. The Act of 1910 embraces only one object, and we do not understand any of the contentions to be that it embraces more than one object.

[2] The first contention is that the Act of 1910 is invalid because it is an attempt to amend a repealed statute. This proposition does not involve the question of compliance

with article 31 or any other provision of the Constitution.

As we have already observed, the Act of 1910 does not directly declare the repealed section of the Revised Statutes amended, but it does re-enact and revive the section of the Revised Statutes, in an amended form, by declaring:

"That Act 86 of the Acts of the General Assembly for the year 1908, amending and re-enacting section 805 of the Revised Statutes of 1870, be amended and re-enacted so as to read as follows: 'Section 805. That whosoever shall,'" etc.

Article 31 of the Constitution does not—nor does any other provision in the Constitution—deny the right of the General Assembly to amend and re-enact—to revive and at the same time amend—a repealed law. The doctrine that a repealed law cannot be amended is good logic, as far as it goes. It means simply that to amend a repealed law, without re-enacting or reviving it, accomplishes nothing. But, under the doctrine that an amending act—and especially an amending and re-enacting statute—absorbs and supersedes the amended act, there ought to be no objection to amending a repealed law in the same act by which it is re-enacted. This simple and convenient method of law-making is not only not forbidden by our Constitution, but seems to be suggested, if not expressly authorized, in article 32, which provides:

"No law shall be revived, or amended by reference to its title, but in such cases the act revived, or section as amended, shall be re-enacted and published at length."

The primary object of this provision in the Constitution was, not to recognize the inherent right of the General Assembly to amend an existing law, or to revive a repealed law, by re-enacting it and publishing at length as revived, or as amended and re-enacted, but to prevent the revival and amendment of laws by mere reference to their titles, and to avoid the inconvenience of having to compare an amending with an amended statute to ascertain the law on any subject. It is contended, with considerable force of argument, that this constitutional provision, that a statute or section of a statute, as amended, shall be re-enacted and published at length, refers only to existing unrepealed statutes, and that it is only the provision that an act revived shall be re-enacted and published at length which refers to statutes that have once existed, but have been repealed. Hence it is contended that a repealed law cannot be amended, even though it be, at the same time, re-enacted and published at length as amended. If this construction of article 32 of the Constitution be correct, there is no reason whatever for the constitutional requirement, that *the act revived shall be re-enacted and published at length*. The lexicographers all agree that the word "revive," in the sense in which it is used here, is synonymous with "re-enact." To revive an act is to re-enact it. Then why require that when a law is revived it must be re-enacted, unless it be contemplated that some new matter, some change or amendment of the law, may be thereby enacted? As has been suggested, the manifest purpose of requiring that *the act revived or section as amended shall be re-enacted and published at length* was to avoid the necessity and inconvenience of having to compare the old with the new law. Where would be the necessity for this comparison in the case of *an act revived*, if there could be no change in the law —no amendment in the re-enactment? An act cannot be revived or re-enacted unless it has been already enacted and has ceased to exist. Hence *the act revived,* mentioned in article 32 of the Constitution, refers only to an act that has been repealed; and the requirement that *the act revived shall be re-enacted* and published at length assumes that it may be re-enacted in an amended form.

The learned counsel for defendant quote from 36 Cyc. 1055:

"An amendatory statute which attempts to amend a section which has already been amended and repealed by implication is void. But, in the absence of constitutional prohibition, the better rule has been held to be that an amendatory statute will be upheld although it purports to amend a statute already amended or which for any reason has been declared invalid."

. Counsel for the defendant say that, whatever merit there may be in the doctrine above quoted, under other Constitutions, it must be decided, under article 31 of the Constitution of this state, that a statute which attempts to amend a law which has already been amended, and repealed by implication is void, and that it was so decided by this court in the case of Mouton v. City of Lafayette, 130 La. 1064, 58 South. 883.

The statute in question in the case of Mouton v. Lafayette was declared unconstitutional because its object was not expressed in its title—not because it was an attempt to amend, or to amend and re-enact, a repealed statute. Pretermitting this latter proposition, it was said:

"The second proposition to be considered then involves the contention that an act which has lost its identity by reason of its having been absorbed or merged in later legislation is nevertheless susceptible of amendment; but, *whatever may be the merits of that contention, considered by itself*, it is difficult to see how it can be sustained in this case, * * * there being no reference, *whether in the title or in the body of the act*, to Act No. 128 of 1910." (N. B. The Act 128 of 1910 was the intervening, amending, and re-enacting statute.)

The statute in question in the case of Mouton v. Lafayette, unlike the statute now under consideration, ignored, even in its text, the intervening amending statute and did not profess to re-enact it. The only omission to be considered in the present case is that the intervening, amending, and re-enacting statute—or rather the intervening repealing statute—is not mentioned in the title of the statute now under consideration. And the only constitutional question that this omission

gives rise to is whether the title of the amending and re-enacting statute under consideration expresses its object, without mentioning the intervening repealing act.

In the case of Mouton v. Lafayette, it was decided, for reasons which do not apply to the present case, that the object of the statute in question was not expressed in its title. Section 2 of Act 30 of 1877, limiting the appropriations and expenditures of parishes and municipalities, was amended and re-enacted by the Act 32 of 1902. Act 128 of 1910 amended and re-enacted the amending act of 1902, so as to except the city of New Orleans from the 10-year limit on contracts involving the future revenues of a municipality and to give New Orleans a 15-year limit. By the Act 270 of 1910 it was attempted to amend and re-enact section 2 of Act 30 of 1877, as amended by the Act of 1902, without making any reference to the Act 128 of 1910. The two acts of 1910 were in conflict; and, if the Act 270 had been valid, it would have undone what the Legislature had done by the Act 128 of the same session. The object or intention to extend the time within which the city of New Orleans might make contracts against future revenues was expressed in the title of the Act 128 of 1910; but the object or intention, to do away with the extension as to the city of New Orleans, was not expressed in the title of the Act 270 of that year, nor did the latter act profess to undo what the former act of that session had done, or make any reference to the former act of that session. Under this state of affairs the court said:

"We are therefore of the opinion that Act 270 of 1910 cannot be so construed as to affect Act 128 of 1910, without bringing it in conflict with articles 31 and 32 of the Constitution, and that, unless it be so construed, it is itself without effect."

We are also referred to the decision in State v. Long, 132 La. 170, 61 South. 154, where it was said that a statute which had

been declared unconstitutional was void, and that a subsequent statute attempting to amend the nonexistent act was inoperative and invalid. Without invoking that logic, the decree rendered in the case of State v. Long might have been justified under these facts: Section 869 of the Revised Statutes provided that, if any judge, justice of the peace, sheriff, or other civil officer should be guilty of a misdemeanor in the execution of any of his offices, he should, on conviction, be fined or imprisoned at the discretion of the court. It had been decided, in the case of State v. Gaster, where an officer was accused of neglecting to enforce the Sunday Law (45 La. Ann. 636, 12 South. 739), that section 869 of the Revised Statutes was inoperative and invalid, because it did not define what should constitute a misdemeanor in office, but left it to the courts to perform that legislative function. Thereafter the Legislature attempted, in the Act 156 of 1902, to amend and re-enact section 869 of the Revised Statutes, so as to declare what offenses of commission or omission on the part of the public officials mentioned should constitute a misdemeanor; and this object of the act was expressed in its title by reference to the number of the section of the Revised Statutes, but without saying what was to be made a misdemeanor in office. When the object of an act is to amend and re-enact a valid existing statute or section of the Revised Statutes, it may be expressed in the title of the amending act by reference only to the number of the statute or section to be amended and re-enacted, without specifying what amendments are to be made. But where, as in the case of State v. Long, the section of the Revised Statutes which the Legislature had attempted to amend and re-enact had been so vague and meaningless that it had been judicially decreed to be inoperative and invalid, it was decided that the reference to its number, in the amending statute, did not express the object of the act. We must assume, therefore, that the decision in State v. Long would have been different if section 869 of the Revised Statutes had been previously declared unconstitutional—not meaningless and inoperative—and if the amending and re-enacting statute had been adopted in conformity with the constitutional requirements. If the decision cannot be reconciled with these views, it must be considered overruled. There is no constitutional objection to the right of the Legislature to amend and re-enact a statute which has been declared unconstitutional; and this court is not committed to any apparent expression of opinion to the contrary, in the case of State v. Long, especially as the author of that opinion wrote a dissenting opinion in State v. Cognevich, 124 La. 414, 50 South. 439, maintaining the validity of an act amending and re-enacting a repealed law, on the ground that the title of the amending act went further than the reference to the repealed law and specified the amendment to be made in re-enacting it.

In the case of State v. Cognevich, 124 La. 414, 50 South. 439, it was held that Act 92 of 1908 was unconstitutional, in so far as it attempted to denounce as a crime the buying and selling of oysters by any other measure than the standard measure provided by the statute. The title of the Act 92 of 1908 was:

"An act to amend Act No. 35 of 1894, * * * by making provision for a standard measure of oysters arriving in sacks."

It was decided that the Act 35 of 1894, in so far as it had provided a standard measure for oysters, had been repealed by Act 153 of 1902. And it was held that the expression of the object in the title of the amending Act 92 of 1908, "to amend Act No. 35 of 1894, * * * by making provision for a standard measure of oysters arriving in sacks," did not express the object to be to provide a standard measure for the buying

135 LA.—35

and selling of oysters. On the state's application for rehearing, the author of the original opinion said that no one could doubt that the title of the Act 92 of 1908 would have been sufficient if it had only declared the object to be to amend and re-enact Act 35 of 1894, but that, when the title went further and specified the particular amendments to be made, it thereby impliedly disclaimed an intention of making any other amendment. Consideration must be given also to the fact that, in the Cognevich Case, as in the case of State v. Nelson, which will be referred to hereafter, the object expressed in the title of the amending statute in question was not declared to be to amend and re-enact—but only to amend—the repealed law.

Counsel for the defendant refer us to an opinion delivered by the Supreme Court of Indiana, in the case of Blakemore v. Dolan, 50 Ind. 194. After a careful reading of the opinion, in the light of the provisions of the Indiana Constitution, we do not construe it as maintaining the proposition that the Legislature cannot amend—even though at the same time it re-enacts—a repealed law. In the Indiana case, the question of the constitutionality of the statute was not at issue. The only issue before the court was as to the effect of an amending statute upon the amended act; and it was decided that the amended statute was absorbed and repealed by implication and superseded by the amending act. The court said:

"A strictly amendatory statute cannot be regarded as an independent statute, but an amendatory statute may be so framed as to amend certain parts of a statute and to add such supplementary sections as might be embraced under the title of the original act. * * * It is settled by the adjudications of this court that, when a section in an existing law is amended in the mode prescribed by the Constitution, it ceases to exist, and the section as amended supersedes such original section, and the section as amended becomes incorporated in and constitutes a part of the original act, and the original section is as effectually repealed and obliterated from the statute as if it had been repealed by express words; and it is upon this principle that it has been held that a section which has been once amended cannot again be the subject of amendment, but the section as amended must be amended."

In the foregoing opinion, however, the court spoke only of the effect of the amendment of laws, and of the right to amend— not of the right to amend and re-enact—an amended or repealed statute. In fact, it appears that the statute then under consideration had only amended—but had not re-enacted—the repealed statute. And, under the constitutional provisions invoked, it was not required to re-enact the amended law in the amending act. The court referred only to the constitutional requirements for amending existing laws, as appears in the statement:

"The Constitution of Indiana prescribes the manner in which amendments to existing laws shall be made. Section 21 of article 4 provides that: 'No act shall ever be revised or amended by mere reference to its title; but the act revised, or section amended, shall be set forth and published at full length.'"

The above-quoted article of the Indiana Constitution is very different from article 32 of the Constitution of Louisiana. The words "revised" and "amended," used in the above article, are synonymous terms. The article does not prescribe the manner in which laws shall be revived or re-enacted. Where the Constitution of Louisiana requires that the act revived or section as amended shall be re-enacted, the Constitution of Indiana requires only that the act revised or section amended shall be set forth. The opinion above quoted does not refer to the question of the right of the Legislature to amend a repealed law in the same statute in which it is re-enacted, because the court was not then dealing with any provision of the Constitution of Indiana on the subject of reviving or re-enacting laws. And the same may be said of the decision in another case to which we have been referred, Peele v. O. & I. Oil Co., decided by the same court, 158 Ind. 374,

63 N. E. 763, where the statutes declared invalid had not re-enacted, but had only amended, the repealed laws.

In the case of State v. Nelson, 135 La. 678, 65 South. 893, it was said in the original opinion by the then Chief Justice, as the organ of the court, that an act, amending an act which had already been repealed, was absolutely without force, because the amendment had no foundation to rest upon. But, on rehearing, the original opinion and decree were reversed; and referring to certain expressions in the former opinion in the case, and to similar expressions in the opinions rendered in the preceding cases of State v. Cognevich, Mouton v. Lafayette, and State v. Long, it was said:

"In making the rulings thus referred to, the attention of the court was not attracted to, nor did the court consider, the possible difference between the case of a statute the title of which declares its object to be to amend, or to amend and re-enact, a statute which has already been amended and re-enacted, and a case, such as we have here, * * * where the title of such amendatory statute not only declares its object to be to amend the section designated, but goes farther and declares, specifically and affirmatively, the object intended to be accomplished by the amendment."

In the Nelson Case it was held that an act of 1908 was valid, notwithstanding it amended and re-enacted certain sections of an act of 1894 which had been repealed by an act of 1896. And, as to a statute of 1912 (Acts 1912, No. 16), the title of which declared the object to be to amend sections 5, 11, and 14 of the Act of 1894, it was held that it was not necessary for the title of the amending act of 1912 to express the object to be to re-enact sections 5 and 11, in amending them, because they had not been repealed; but, as to section 14, which had been repealed, it was said:

"In so far, however, as section 14 of the Act of 1894 is concerned, we are of opinion that, in view of its having been merged in Act 13 of 1896, and superseded by Act 244 of 1908, it is beyond mere amendment, and that its revival or re-enactment can be effected only by a statute, the title of which expresses that object, or by an independent statute."

The Supreme Court of Alabama, in Gandy v. State, 86 Ala. 20, 5 South. 420, where it appears that the title of a statute declared its purpose to be to amend an amended act and specified the additional amendments to be made. It was held:

"The reference in the title to the amended act may be regarded as surplusage; and, so regarded, the act is not violative of Const. Ala. art. 4, § 2, providing that 'each law shall contain but one subject, which shall be clearly expressed in its title,' and that no law shall be revived, amended, etc., 'by reference to its title only, but so much thereof as is revived, amended,' etc., 'shall be re-enacted and published at length.' * * *

"It would be no objection that it amended or repealed by implication several sections of the Code without referring to them in any manner, or publishing them at length as amended."

The last paragraph of the above quotation is very pertinent to the defendant's second and third contention.

The opinions and decisions of courts of other states must be read with reference to the provisions and requirements of the Constitutions of the respective states. We have not been referred to, nor have we found, a decision holding that a repealed statute cannot be amended in the same act in which it is re-enacted, under a constitutional provision corresponding with article 32 of the Constitution of this state. And it is now our deliberate opinion and judgment that the Legislature of this state has the authority to make such amendments, in re-enacting or reviving a repealed law or a law that has been declared unconstitutional, as relate to the subject or object of the original statute, provided this object be expressed in the title of the amending and re-enacting statute.

We are also of the opinion that the object of the Act 271 of 1910 is expressed in its title, although Act 86 of 1908, which repealed section 805 of the Revised Statutes, is not mentioned in the amending and re-enacting statute of 1910. The title of the Act of 1910

expresses the object of the act to be to amend and re-enact section 805 of the Revised Statutes, and it goes on and specifies the amendments to be "to define the crime of kidnapping and to prescribe a penalty therefor." This title is in conformity with the requirements of article 31 of the Constitution. Conceding, as we must, that, under the provisions of article 32 of the Constitution, the Legislature had the authority to amend section 805 of the Revised Statutes in the re-enacting statute of 1910, how can it be said that, although the title of the Act 86 of 1908 was sufficient to amend and re-enact section 805 of the Revised Statutes, the same title was not sufficient for the Act of 1910 to accomplish the same object?

The defendant's second contention, that the title of the Act of 1910 is incorrect and misleading, and his third contention, that the Legislature has incorporated among its provisions portions of—and seeks to amend —section 806 of the Revised Statutes, are so closely related that one can hardly be considered separately and apart from the other.

The defendant's counsel have suggested in their brief a title for the Act of 1910, which, if it had been used, would have expressed all that was accomplished by the statute. But we have only to decide whether the title that was adopted fulfilled the constitutional requirements, because it is not necessary that the title of an act shall express all of the consequences and effects that result from the adoption of the act.

In deciding that the title of the Act of 1852 (Acts 1852, No. 255), entitled "An act to provide a homestead for the widow and children of deceased persons," the object being to allow the widow and minor children in necessitous circumstances $1,000 by preference over creditors of the succession of the husband and father, it was said in Succession of Lanzetti, 9 La. Ann. 333:

"This statute certainly affects the antecedent law on the subject of privileges contained in our Code. But it does so by creating an entirely new class of privileges for which the Code made no provision; and we do not think that, under the constitutional clause above referred to, it was necessary that this legal consequence should be indicated in the title."

The constitutional clause referred to above was article 118 of the Constitution of 1845, providing:

"Every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title."

The Act of 1910 certainly affected the antecedent law on the subject of kidnapping. But it did so by creating an entirely new crime, for which no provision had been made.

The defendant's counsel refer us to the case of Wisner's Curator v. City of Monroe, 25 La. Ann. 598, where it was held that, under a title expressing the object of an act to be to amend only the first section, it was not competent to amend other sections of the former statute. But, when we look into the facts of that case, we find that the act to be amended was the act of incorporation or charter of the city of Monroe; the first section of the act related only to the geographical limits of the city; and the amending act, under a title expressing the object to be to amend only the first section, attempted to amend other sections, so as to abolish the office of constable of the city and transfer the duties of the office to the sheriff of the parish. The statute was declared unconstitutional in so far as its enactments exceeded the object expressed in its title, because the covert enactments were not germane to the object expressed in the title.

In the case of State v. American Sugar Refining Co., 106 La. 553, 31 South. 181, it was held:

"An act to amend certain sections of a general law is limited in its scope to the subject-matter of the sections proposed to be amended. The amendment of a special section of an act implies merely a change of the provisions upon the same subject to which the section relates."

The doctrine announced in the two decisions last mentioned has no application to the present case, because the statute of 1910, which we are now considering, did not repeal or amend or re-enact, or affect prosecutions under, section 806 of the Revised Statutes which was then the only other law on the subject dealt with in the Act of 1910.

"The repeal of laws is made in two ways: The one, by a direct and express repeal; the other, by the passage of a new act which covers the entire subject-matter of the old one and presents different punishment and creates such an irreconcilable repugnancy between the acts that both cannot subsist together." Coghill v. State, 37 Ind. 111.

The Act of 1910 provides a different penalty for the commission of the acts denounced by section 806 of the Revised Statutes when committed under circumstances not provided for in section 806. Therefore there is no repugnancy between the two statutes, and they both subsist.

In City of Alexandria v. White, 46 La. Ann. 449, 15 South. 15, it was decided that a general revenue law, conferring upon municipal corporations the authority to collect licenses for various occupations, was valid legislation, notwithstanding it amended by implication the acts of incorporation of municipalities by conferring upon the municipal authorities powers not given them by their acts of incorporation, without mentioning the acts of incorporation in the title of the act which amended them impliedly or incidentally.

In the case of People ex rel. Klokke v. Wright, 70 Ill. 388, a statute known as the "Mayor's Bill" affected the duties of municipal officers, and, it was contended, amended, by implication, the cities' charters without expressing such object in the title of the statute. The Supreme Court of Illinois said:

"The clause of the Constitution which says, 'No law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act,' cannot be held to embrace every enactment which in any degree, however remotely, affects the prior law on a given subject. An act complete in itself is not within the mischief designed to be remedied by this provision, and is not prohibited by it. * * *

"It cannot be held that this clause of the Constitution embraces every enactment which, in any degree, however remotely it may be, affects the prior law on a given subject, for to so hold would be to bring about an evil far greater than the one sought to be obviated by this clause."

In People v. Mahaney, 13 Mich. 496, the court wisely said:

"If, whenever a new statute is passed it is necessary that all prior statutes modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the state would require to be republished at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to re-enact and republish the various laws relating to them as now modified, we shall find, before the act is completed, that it not only embraces a large portion of the laws of the state, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, but not one of which can be covered by its title.

"This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act, which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to, but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent."

See, also, Ex parte Pollard, 40 Ala. 77, 100; Spencer v. State, 5 Ind. 41; Branham v. Lange, 16 Ind. 497.

In Illinois, section 13, art. 4, of the Con-

stitution corresponds with our article 31. In Mix v. I. C. R. R. Co., 116 Ill. 508, 6 N. E. 42, it was contended that an act amending sections 12 and 13 of an act entitled "An act in relation to fencing and operating railroads," approved March 31, 1874, repealed by implication sections 2 and 4 of chapter 131 of the Revised Statutes and violated the provision of the Constitution because that purpose was not stated in the title. The court said:

"If the amendment of those sections operated as a repeal, by implication, of sections 2 and 4 of chapter 131, as claimed, or if it simply took all violations of the original act out of the operation of the two sections last mentioned, the changes thus wrought by the amendatory act would in either case be simply one of the effects of the law. It is sufficient that the act passed is fairly covered by its title. The Constitution does not require that all the legal effects of an act, such as repeals by implication, should be expressly stated in the title. Such a thing would be utterly impracticable. Where the act itself is clearly embraced in the title, as is the case here, all legal consequences necessarily flowing from it will, for the purposes of this constitutional requirement, be regarded as embraced within the title also. See Timm v. Harrison, 109 Ill. 593.

"The claim that to give the amendatory act of 1885 a retrospective operation, so as to embrace the present case, is in effect to hold that that act repeals the second and fourth sections of chapter 131, above cited, is clearly not warranted. The effect of the amendatory act, so far as these two sections are concerned, was simply to take out of their operation all violations of the twelfth and thirteenth sections of the old act. The first and fourth sections in question still remain as general provisions of law, to be applied in all cases just as they were before, except where the Legislature has expressed a contrary intent, as was clearly done in the amendatory act in question."

Act 271 of 1910 did not affect the law contained in section 806 of the Revised Statutes. The statute of 1910 provides for the infliction of the death penalty upon any person convicted of forcibly seizing and carrying a child out of this state or from one part of the state to another. Section 806 of the Revised Statutes provides a different penalty for merely taking a child from the custody of his or her parent, tutor, or guardian without authority of law.

The effect of the adoption of the Act 271 of 1910 was to abolish the law against kidnapping a girl at or above the age of 12 years, while making it a capital crime to kidnap a boy under the age of 14 years; and it is argued that this obnoxious feature of the statute is proof that the title did not apprise the legislators of the object and effects of the act. This argument has little force when we consider that the discrimination was made in favor of boys and against girls between the ages of 12 and 14 years, in section 806 of the Revised Statutes, and was repeated in a statute adopted in 1914, amending and re-enacting section 806. It is not our province or desire to criticise the acts of the Legislature. We have only to decide whether they conform with the requirements of the Constitution; and we have concluded that the Act 271 of 1910 conforms with all requirements of the Constitution, and is valid legislation.

On the original hearing we deemed it unnecessary to decide the questions presented in the other bills of exception, when we were of the opinion that the statute under which the defendant was convicted was unconstitutional and invalid. Having reversed our decision on that issue, we shall now dispose of the other bills in their proper order.

[3] The first bill of exceptions was taken to the ruling permitting the state, over the defendant's objection, to introduce testimony in rebuttal to prove that the defendant was at Longville, La., about 50 miles from the parish in which the crime was alleged to have been committed, about three months before the date of the alleged kidnapping.

The facts presented in accordance with the Act 113 of 1896 are as follows:

"The prosecution alleges in the bill of indictment that Bobbie Dunbar was kidnapped on August 23, 1912. The defense established an

alibi by showing by a number of Mississippi witnesses that he was in Mississippi continuously, with the exception of five or six weeks, from September to October, 1912, when he was in the Charity Hospital, and that he had a child with him when in Mississippi from the 19th day of July until he was arrested, that that child was called Bruce, and was the same child that was taken from him when arrested, and that is now claimed by the Dunbars, and claimed by the state to be Bobbie. The defendant was cross-examined by counsel for the state, and asked if he was not in different points in Louisiana during the year 1912, and, among others, whether he was not at De Ridder or Longville in the summer of 1912. He denied having been there.

"Counsel for the state in rebuttal have placed on the stand Mr. Bennett and attempted to prove by him that the defendant was at Longville during the latter days of May or the beginning of June, 1912. To this proof counsel for defendant excepts, on the ground that the place where the defendant was in the latter part of May or the first of June, 1912, were matters collateral to the issue, and that the state was bound by the answer of the witness and cannot now contradict him by the testimony of Mr. Bennett.

"The court overrules the objection for the reason that the defendant in person took the stand and undertook to give to the jury his whereabouts from some time in February to October.

"Bill reserved.

"In connection with the above bill it is admitted that the defense proved by Mr. Stephens that Walters left North Carolina in February, 1912, and by Mr. Bledsoe that Walters was in Iron City, Ga., on the 6th day of May, 1912, and by Mr. Murray, of North Carolina, that Walters left North Carolina in February or March, 1912, and the same facts by defendant, showing his whereabouts from November, 1911, until the time of his arrest, all without objection on the part of the state, and that the defendant specially denied in his examination in chief that he had ever been in the state of Louisiana during the year 1912, except during the time that he was in the hospital in New Orleans."

The testimony of the state's witness, Mr. Bennett, would not have been admissible in rebuttal for the purpose of contradicting the defendant's statement regarding his whereabouts three months before the alleged crime, if the statement had been made only on his cross-examination. The state has no right to cross-examine a defendant on immaterial and collateral facts for the purpose of contradicting or impeaching his testimony. State

v. Bellard, 132 La. 491, 61 South. 537; Wharton's Criminal Law (9th Ed.) 484. But the rule does not forbid the state to contradict the defendant's testimony given in his examination in chief upon an issue which he brought into the case. Therefore there was no error in the ruling.

[4] The second bill of exceptions was taken to the ruling of the judge sustaining an objection of the prosecuting attorney to a question propounded to the state's witness, Mr. Bennett. The state's attorney did not state the reason for his objection, nor did the judge assign any reason for sustaining it. The question was a hypothetical one, which ordinarily should have been permitted for the purpose of probing the conscience and testing the credibility of the witness. But the judge says, in his statement per curiam, that the witness had been cross-examined at great length, and that he finally exercised his right to confine the cross-examination to other than hypothetical questions. We cannot say that he abused the discretion, which he may and should exercise in putting some limit to the cross-examination.

[5] The third bill of exceptions was reserved to a portion of the judge's charge to the jury and to the judge's refusal to amend his instructions in certain particulars as requested by the defendant's counsel. After describing the various elements composing the crime, the judge added:

"And all persons aiding, advising, or abetting therein shall also be guilty.

"All persons aiding and abetting the commission of a felony are principals.

"Persons who are said to be aiding and abetting the party actually committing the crime, if they be confederated or engaged with him in a common design, or of which the offense is part, or if by their presence they encourage him in the commission of it. And persons are said to be so aiding and abetting who, being engaged in the same design with the person who actually commits the offense, although not actually present at the commission of it, are yet at such convenient distance as to be able to come to the immediate assistance of their associate

if required, or to watch to prevent surprise, or the like."

Before the charge was delivered to the jury, it was submitted by the judge to the defendant's counsel, and they requested the judge to insert the word "present" in the first and second paragraph above quoted, so that they would read, "All persons present, aiding, advising, or abetting," etc., and would correctly define a principal and not an accessory; but the judge refused to make the correction. Counsel for the defendant also requested the judge to insert the word "present" in the third paragraph quoted above; and they requested that this paragraph be corrected so as to read as follows:

"Persons who are present at the commission of an offense are said to be aiding and abetting the party actually committing it if they be confederated or engaged with him in a common design, or of which the offense is part, or if by their presence they encourage him in the commission of it. And persons are said to be so present who, being engaged in the same design with the person who actually commits the offense, although not actually present at the commission of it, are yet at such convenient distance as to be able to come to the assistance of their associate, if required, or to watch to prevent surprise, or the like."

The instructions given to the jury were erroneous. All persons aiding, advising, or abetting the commission of a crime are not principals; for the aiders, advisers, and abettors who are not present, actually or constructively, are accessories. And, to be convicted as an accessory a person must be indicted as such. The defendant was not indicted as an accessory, and therefore could not have been convicted legally, if the evidence showed that he advised, aided, and abetted the commission of the crime, but did not show that he was actually or constructively present.

The third paragraph of the instructions is not a complete sentence, and we find no meaning in it, viz.:

"Persons who are said to be aiding and abetting the party actually committing the crime,

if they be confederated or engaged with him in a common design, or of which the offense is part, or if by their presence they encourage him in the commission of it."

The foregoing instructions were so worded that they might well have misled the jury to convict the accused of being a principal in the second degree upon evidence of his guilt as an accessory; and, as he was not indicted as an accessory, either before or after the fact, he could not have been convicted as an accessory legally.

Counsel for the state contend that the jury could have compared these erroneous or incomplete instructions with another part of the judge's charge, where he correctly defined principals in the first and second degree and accessories before and after the fact, and could not have been misled. But we do not believe that it can be presumed that the judge's correct exposition of an abstract proposition of law, in another part of his very lengthy charge, where he was dealing with another subject, corrected his erroneous instruction bearing directly upon the question of the guilt or innocence of the party accused. Hence we are constrained to hold that the erroneous charge was a reversible error.

As it will be necessary to remand this case for a new trial, it is unnecessary to discuss the bill of exceptions reserved to the refusal of the district judge to grant a new trial on account of the alleged newly discovered evidence, or on account of the separation of the jury or the alleged hostile conduct of the audience in the courtroom during the trial.

The record discloses that there was some semblance of hostile demonstration during the progress of the long trial, but the judge and other officers of the court were prompt to suppress and to properly rebuke it.

[6] The separation of the jury, however,

was entirely contrary to the common-law manner of conducting a trial for a capital crime. The jurors were permitted to leave the courthouse every night and to separate and sleep at a hotel in six rooms—two in each room. The rooms were in three suites of two rooms each, with a connecting bath to each suite; and the outside doors were locked, so that the three groups, of four jurors each, were entirely separated and shut off from communication with one another. And they were all out of the presence, sight, and hearing of the deputy sheriff, who slept in the hall in front of the six rooms. This court and others have lately given a rather liberal construction to the requirement that the jurors shall not be permitted to separate in a capital case at any stage of the proceedings—or in any other criminal trial from the time the case is submitted until the verdict is rendered—and have upheld the verdict in cases where the jurors, though somewhat separated, were all under the eye of the judge or sheriff. But we do not feel prepared—if, indeed, we considered ourselves authorized—to do away with this legal requirement entirely.

For the reasons assigned, the judgment heretofore rendered by the court, decreeing the Act 271 of 1910 unconstitutional and invalid, and ordering the accused discharged from further prosecution under that statute, is annulled and set aside. And it is now ordered, adjudged, and decreed that the verdict and sentence appealed from be, and they are, annulled, and that this case be remanded to the district court for a new trial in accordance with the views herein expressed.

LAND, J., dissents, for the reasons assigned in the original opinion of this court.