(40 South. 860.)

No. 15,950.

STATE v. DOUGLAS.

(March 12, 1906.)

1. HOMICIDE—INSANITY AS A DEFENSE—APPOINTMENT OF EXPERTS.

The plea of the defendant was insanity. It does not appear that the cause of the accused was prejudiced by the refusal of the trial court to appoint a board of medical experts.

2. CRIMINAL LAW—CONTINUANCE.

The physicians named in the motion examined the accused.

3. SAME—PROCEDURE.

Issue which could go to the jury. The court, in substance, states in the per curiam that being aware that the plea of insanity would be raised on the trial before the jury (and the motion for the appointment of a board of experts having been made on the 14th of the month, the case being fixed for trial on the 19th), deemed it advisable and proper to refer the question of insanity to the jury; that the physicians named in the motion testified before the jury and stated that he was sane; that, if these physicians had examined the accused as to his insanity as a board of experts, their report would have added weight to the conclusion.

*Held*, that the court's action does not present ground for reversal of the verdict and judgment. State v. Reed, 7 South. 132, 41 La. Ann. 583; The Armstrong Case, 19 South. 475, 48 La. Ann. 504.

4. CRIMINAL LAW — CONTINUANCE—ABSENCE OF WITNESSES—DISCRETION OF COURT.

It is settled by repeated decisions that the trial judge is vested with large discretion to grant or refuse such a motion.

A subpœna was issued for a witness by the state, and a subpœna was issued for the same witness by the defendant.

The return on the first subpœna showed that the witness could not be found. His whereabouts were unknown.

No return had been made on the second subpœna, when the case was called for trial. The deputy sheriff was expected, but had not yet returned.

The court ruled that defendant should make a showing for the continuance. A showing was made which the court did not take as true. The trial was proceeded with. Before the jury was impaneled the deputy sheriff returned and made a return similar to the one on the return for the state.

The defendant not having indicated where the witness resided, or where he could be found, the application was not improperly refused, particularly in view of the fact that the court was satisfied that it was made for mere delay, and that the defendant did not rely upon the testimony of the witness.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1311.]

5. SAME—REBUTTAL TESTIMONY.

After the state had closed its case and the defendant had rested, it was within the authority of the court, in the interest of fair administration of justice, to permit witnesses to be examined in rebuttal.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1609, 1619–1624.]

(Syllabus by the Court.)

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; Charles Vernon Porter, Judge.

Frank Douglas was convicted of murder, and appeals. Affirmed.

James H. Hicks and N. T. Smith, for appellant. Walter Guion, Atty. Gen., and William Augustus Wilkinson, Dist. Atty. (Lewis Guion, of counsel), for the State.

BREAUX, C. J. The accused was charged with having committed murder. He was arraigned. His case was duly fixed. It was called, and on the day called he was tried and found guilty as charged, and condemned to suffer the extreme penalty of the law.

The appeal is before us on grounds stated in three bills of exceptions.

The insanity of the accused having been alleged in the district court as his ground of defense, the day before the trial application was made for the appointment of a board of medical experts to examine him touching his insanity, vel non and to make return of the result of its examination before the day set for trial. This application was taken under consideration by the court, and on the day set for trial the court overruled the motion. Thereupon counsel for the accused reserved a bill of exception on the ground that the court had overruled their motion on the day of trial, and that they thereafter did not have time to prepare a proper defense.

The judge of the court of first instance in answer to this complaint states in substance: That he did not grant the order, for he did not think that he should. He knew that the physicians named in the motion had, at the request of the prisoner's counsel, examined the accused as to his condition of mind, and were prepared to testify as to his mental condition. That the prisoner having been arraigned and having pleaded, he thought it advisable to leave the question to

be passed upon by the jury, which question he knew would be brought up by way of defense. That the physicians named in the motion pronounced him sane. That the accused was not prejudiced in the least. On the contrary, that the ruling complained of was favorable to him, for, if the witnesses had testified as experts appointed by the court, the jury would, in all probability, have considered the testimony in the form of a return by the board of experts entitled to greater weight than the testimony of the physicians before the jury.

We consider that the only question presented in this bill is whether the accused was prejudiced by the court's refusal to appoint a commission de lunatico inquirendo.

We have not found that the defendant was prejudiced.

The appointment was a matter of form, and all was done that was needful in order to place the testimony of these witnesses before the jury. This ground of complaint would not justify us were we to set aside the verdict. In order to set aside a verdict, error must be evident. It does not appear here.

The physicians testified that the accused was sane at the time of the examination. We have no reason to infer that they would have pronounced him insane had they acted under a commission. We do not infer that he was insane at the time that the act was committed.

There is no complaint urged on the ground that these physicians would have gone further into the question of the sanity or insanity of the accused if they had been appointed as a board. We gather that they had all the information that they would have had had they been appointed as requested.

Relative to referring the issue of insanity to the jury: If we are to infer that it was the intention of the defense, although not specially alleged, to bring the matter before the judge prior to the trial and obtain a decision at his hands, we are not of the opinion that the defense was in a position to insist upon that step in the trial. At that particular time, just before going to trial, the judge could have the issue submitted to the jury (State v. Reed, 41 La. Ann. 583, 7 South. 132), particularly as we understand from the judge's per curiam, the correctness of which is not at all questioned, that it was the intention of the defense to submit the question of insanity to the jury. The judge and the jury together could pass upon the question, and this was done.

A similar question was before the court for decision in State ex rel. Armstrong v. Judge, 48 La. Ann. 504, 19 South. 475. The court said in substance, in a case somewhat similar, that the question of insanity could be submitted to the jury and cited in support of that view a number of decisions. The question of the guilt or innocence of the accused could properly be tried with the issue of insanity.

After the court had refused to appoint a commission the defendant's counsel moved for a continuance on the ground that they had not had time to prepare their defense.

With reference to continuance for which defendant prayed, we can only repeat that which has again and again been said, that continuances are almost entirely left to the discretion of the trial judge, and that it presents no ground for complaint on appeal, unless it is manifest that error has been committed. State v. McCarthy, 43 La. Ann. 541, 9 South. 493; State v. Chambers, 44 La. Ann. 603, 10 South. 886; State v. Bevell, 47 La. Ann. 48, 16 South. 568; State v. Johnson, 47 La. Ann. 1225, 17 South. 789; State v. Perry, 51 La. Ann. 1074, 25 South. 944; State v. Fuller, 111 La. 88, 35 South. 395.

The court was familiar with the facts and circumstances as they were disclosed before and during the trial.

The alleged crime had been committed months before. The grand jury had acted, the defendant had pleaded as before stated, and the judge thought that he had had ample time to prepare.

We are not inclined to hold that he erred. There are some things which must be left to the discretion and good judgment of the court.

We pass to the next bill of exceptions which presents additional ground for a continuance based upon facts which arose after the first application for a continuance had been refused.

It appears, as stated in this bill, when the case was called for trial, that all witnesses were present at the trial except one, Ben Weathers.

The defense objected to going to trial mainly on the ground that no return had been made on the subpœna which had been issued to secure the presence of Weathers. The defense asked for a continuance. The court held that counsel would have to make a showing for a continuance on the ground that he (Weathers) was absent.

The court states, in substance, as part of the bill, that it was true when the case was called for trial there was no return showing that service had been made upon Weathers.

But a subpœna had already, on part of the state, been issued for this witness. (The court states that he was one of the principal witnesses for the state.)

The return on the subpœna for this witness, issued on application of the prosecution, showed that he could not be found, and that after diligent inquiry and search the officer had learned that he was out of the parish. This was made evident by the said return.

The trial judge said that the sheriff informed him that doubtless on account of the muddy roads and the high streams, rendered not easily fordable by recent heavy rains,

the deputy who had charge of the subpœna had not returned, and that he would be in later in the day. Shortly after the trial had begun the deputy came in and made his return in writing on defendant's subpœna, intended for Weathers. This return was identical with the return on the subpœna for the state.

The trial judge said that he was satisfied that the defense did not wish the presence of Weathers; that this witness had testified at the coroner's inquest; that his testimony would have added weight to the state's case, "if there had been any possibility of adding weight to the case;" that the testimony of the witness Weathers before the coroner's jury as to what the accused had said, and as to his conduct after the killing, showed in the court's opinion that the accused was not insane, but aware of what he was doing.

The court annexes a copy of the testimony before the coroner to show, "if such a fact can be shown," that the affidavit for a continuance taken by the accused was false, and that Ben Weathers was not an important and material witness in the case, except for the state.

The following is a copy of the testimony at the coroner's inquest: Ben Weathers, being duly sworn, says:

"I was going out of bars in front of the house when the gun was fired, and Mose Tigre, who was with me, says, 'They are raising hell up there,' and I said, 'No, just some nigger trying to play bad.' Then I hear some one running behind me and I went to meet him, and it was Frank Douglas, who said, 'Ben, I have killed a woman.' I said, 'No, Frank,' and he said he was going to kill himself, and raised the muzzle of his gun about six inches above his head, and fired the gun. Then I said, 'Nigger, if you killed that woman, you cannot get off,' and I caught hold of him, and he got away from me and ran off."

The witness made his mark, and this mark is testified to by another witness. A justice of the peace acted as coroner.

The defendant in his motion for a continuance, which is not made part of the bill

of exception, averred that the testimony of the absent witness was material to his defense.

The usual grounds for a continuance are set forth, such as that he had used due diligence, and the other grounds usual in applying for a continuance. He added that the absent witness, if present, would swear that he was at the dance the night the killing took place, and that he carried the accused away from the place; that at the time the accused was absolutely crazy and insane, and did not know what he was doing or had done, and was in that state until the next morning, and that the accused is subject to insane and crazy spells; that at times he is absolutely irresponsible for his acts; that he could prove these facts by no one else present, and the said witness is in the jurisdiction of this court and can be brought here, "and his evidence can be had," if the court will grant the time; "that his attorneys were appointed by the court only a short time since, and have not had sufficient time to give this case the thought and attention it should have."

And the affidavit of the accused sets forth further to the same effect, which we do not copy because it would be in the nature of a repetition.

Reverting to the absence of Weathers, witness: The court had taken cognizance of the return on the subpœna issued by the state for this witness, and was thereby made aware that he could not be found. Had the court awaited the return of the deputy sheriff before referred to, it would not have been possible to order a writ of attachment to issue for the absent witness. It would have been useless to issue the order. If there was irregularity in thus going to trial, it was cured by the return of the deputy and his indorsement on the subœna.

The next step was to direct the defense to make a showing. This was done. They (counsel for defendant) acted accordingly, and made affidavit.

Up to this point in the trial we are not of the opinion that the rulings made give rise to ground for complaint, for we infer that the jury had not been impaneled when the deputy sheriff returned and that beyond question the witness was not to be found.

Again, with reference to Weathers, witness: It does not appear that the accused gave or could give any information as to where the witness Weathers could be found. Nothing was said about his place of residence or if he had a residence, nor was the least intimation given as to his whereabouts. He was absent. That seems about all that was known of him.

We are not prepared to hold that the judge erred in declining to grant a continuance to secure the presence of a witness, at a succeeding term of the court, of whom so little seems to have been known. State v. Mansfield, 52 La. Ann. 1355, 27 South. 887.

There was no prejudicial error shown. "It is within the discretion of the court, where the materiality of the expected evidence is set forth in the affidavit, to refuse a continuance if it should appear that the defendant's sole object was delay." State v. White, 7 La. Ann. 531; Wharton's Criminal Pleading, 593; Territory v. Nugent, 1 Mart. (O. S.) 109, 5 Am. Dec. 702.

In the case of State v. Fairfax (La.) 31 South. 1011, cited by the defense, it does not appear that the sheriff had made any attempt to secure the presence of the witness, and therefore will not be followed in the pending case.

This brings us to the complaint of the defendant that counsel did not have time to prepare their defense.

In order, in deciding this point, to have the dates near one to the other, we will state that the homicide was charged to have been committed on the 1st day of October,

1905. The accused was indicted on December 9th following, arraigned on the 11th of that month, and his trial was fixed for the 19th of the same month, and on that day he was tried. Two members of the bar were appointed by the court to defend him. The date of the appointment does not appear in the record. It must have been on the 11th of the month of December, not later, the day he was arraigned, for we find the following entry in the minutes (quoting):

"The accused being in open court, accompanied by J. H. Hicks and N. T. Smith counsel appointed by the court to defend him."

Counsel did not personally state to the court that they were not prepared to properly defend the accused and that they were in need of further time to defend him. The court thought that he had time enough. No motion was made by them containing their personal averment upon the subject, and it follows no affidavit by counsel.

. In the absence of evidence or reasonable suggestion showing that time was needful, we will not assume that a continuance should have been granted on that ground. The trial judge knew the facts and circumstances connected with the case and thought that he was not entitled to a continuance.

We pass to the next bill of exception, which brings up the objection to the court's ruling, which permitted two witnesses to testify in rebuttal, touching the statements of the accused made after the homicide. This bill of exceptions informs us that the state had rested its case as also had the defendant. The court says:

"The defendant had offered a number of witnesses in support of the plea of insanity. The mother of the accused testified that her son was subject to epileptic fits, and the coroner, Dr. Gillian, had sworn that some 14 years ago, when the accused was a lad, he had been called to see him and found him in a spasm which he diagnosed as an epileptic fit. The medical experts testified that persons thus afflicted were liable to spells of mental aberation, and became unconscious of their acts."

The trial judge states that the district attorney tendered the witness to prove that the statements of the accused about his having killed Dora, the name of the deceased, were rational, and did not show mental aberation.

On this point we will state, as we have before, in the nature of things, much must be left to the discretion of the trial judge. Otherwise the administration of justice would be, at times, completely balked.

We quote from Wigmore, § 1873:

"It is competent for the judge, according to the nature of the case, to allow a party who has closed his case to introduce further evidence. This depends upon the circumstances of each particular case, and falls within the absolute discretion of the judge to be exercised or not as he best may think proper."

It is therefore ordered, adjudged, and decreed that the judgment and verdict appealed from are affirmed.