BREAUX, C. J.
The defendants were charged with killing and murdering Nolton Guillary on the 15th day of September, 1912. They were indicted on November 8, 1912; arraigned, they pleaded not guilty on the 8th of November, and their trial was fixed for the 15th day of the same month; it began on that day and was concluded the next. The jury found both guilty of manslaughter.
A motion for a new trial was filed and overruled. Delicien Bellard was condemned to serve five years at hard labor in the penitentiary, and Aristide Bellard, three years.
[1,2] The first of defendants’ objections to the court’s ruling wits to the question of the district attorney permitted to be propounded over defendants’ objection, to one of the defendants, Aristide Bellard, who was testifying on cross-examination, whether he (Aristide) did not tell witness H. D. Smith, the morning of the shooting, not to tell the sheriff that he (Smith) kept his (defendant’s) gun for him. Had he not requested him (Smith) to deny it if the sheriff asked him anything about it? The witness Aristide answered the district attorney and said that he had told Smith not to tell the sheriff that it was his pistol for the reason that it did not belong to him (Aristide), but to his brother Severin.
The objection of defendants was that this tended to prejudice the jury against the witness. The objection was properly overruled by the court. The witness was testifying in his own behalf, and the question was allowed for the purpose of rebutting the testimony of Aristide, who was testifying on cross-examination, and to test the veracity of the witness. The witness Smith had testified while the state was examining witnesses. It was entirely proper at that time to propound the question, for witness (Smith), had already testified in chief, and the district attorney was not violating the rules of evidence in asking the witness Aristide as to what he had said about the weapon, as we understand that while testifying in chief the witness Aristide had been questioned upon the subject. Moreover, there was very little disagreement in the statement between *496 the witness Aristide, who was testifying, and the testimony of the witness Smith. The witness Aristide only added the following: That he had said to Smith at the time that the pistol belonged to his brother. The objection did not have .the least merit. The story of the weapon as told by the witnesses amounted to nothing.
Another point, raised while the witness Aristide Bellard was testifying on the cross-examination by the district attorney, was whether he had a bottle of gin the night of the killing and gave a drink to Lincoln Riley, and whether he was armed and in a quarrelsome mood while at tlie fair. The objection in behalf of the defendants, through learned counsel, was that the witness Aristide on his examination in chief had never been interrogated as to what had transpired at the house where the shooting occurred; that the state had no right to propound any question beyond the direct examination.' Aristide Bellard denied that he had a bottle of gin and had given a drink to Lincoln Riley. Defendants’ contention is that this objection also had a tendency to prejudice the minds of the jury.
We do not see the relevancy between what transpired at the house -where the shooting occurred and the story of the bottle of gin, the giving a drink to Riley, and the quarrelsome moQd of the witness Aristide. It must have had bearing, and until it is made to appear that the court has exceeded the discretion it has the ruling will not be assumed erroneous.
The court’s ruling was that, as this witness had taken the stand in his own behalf, the question on cross-examination was permissible for the purpose of rebutting and also for the purpose of testing his memory and truthfulness;- that the question was admissible for the purpose of impeaching and attacking the credibility of the witness, as the state may rebut testimony elicited on cross-examination in pursuance of the purpose just mentioned. The question referred to things mentioned in the examination in chief, is the information given by the district judge, which we, of course, accept as correct unless there is evidence before us to the contrary. The witness simply denied that he had given liquor to any one or that he was in a disagreeable mood at the place at which there was quarreling and fighting. It does not appear to us that this question under any circumstances had a tendency to prejudice him before the jury, and that is the objection urged.
• Another objection of the defendants was to the ruling of the district court in permitting the district attorney to propound the question to one of the witnesses, Lincoln Riley, as follows: Whether he had seen one of the accused, Felicien Bellard, pull his pistol from -his pocket and attempt to shoot Nolton Guillary on the night of the killing while they were at the fair. The witness answered the question in the affirmative, it is stated. The contention on the part of the accused was that this was not for the purpose of eliciting rebuttal evidence; that it should have been offered in chief; that the question was put to the witness for the purpose of contradicting the accused, Felicien Bellard, who had been put on his guard by the state, and the said question was objected to by the defense on the ground that the same was not rebuttal evidence.
The court gives as reason for admitting 'the testimony that, the accused having also taken the witness stand in his own behalf—
“the above question was allowed as rebuttal evidence as to the testimony of the other accused, Felicien Bellard, who had also taken the witness stand in his own behalf and had testified in chief negatively as to the said question.”
It is to be inferred, although not clearly expressed, from the foregoing that both of the defendants testified in the case; although it does not appear whether both testified *498 on this point, it does appear that Eelicien Bellard testified and denied that Lincoln Riley testified to the truth. The matter was not new; Eelicien Bellard had testified in chief in his own behalf and said as a witness that it was not true that he had pulled his pistol and attempted to take the life of Nolton Guillary while they were at the fair a short time prior to the killing. The purpose in offering the testimony of Lincoln Riley was not to prove anything in the case, but to disprove the fact to which Eelicien Bellard had testified. Riley contradicted Eelicien Bellard about the pistol and other things stated; as he was the one to whom the drink had been .given, he could be heard to prove the fact which had been sworn to while the case was before the court in chief. It may have had the effect of strengthening the case of the state; this does not have the effect of rendering it illegal or incompetent evidence. It was rebuttal testimony. State v. Fourchy, 51 La. Ann. 228, 25 South. 109.
[5] The remedy that the accused had, if the rebutting testimony had the effect before stated to an unfair extent, was in asking special instructions from the court. It was not new evidence. It had been testified to in chief. State v. Boswell, 45 La. Ann. 1158, 14 South. 79.
It should not be attempted to go beyond the rules of practice and ask to have the rebuttal evidence excluded. State v. Madison, 47 La. Ann. 30, 16 South. 566; State v. Brown, 111 La. 173, 35 South. 501.
We will go further into the examination of this witness, as it presents an important point, and in thus doing we state again, in substance, that the court permitted a question propounded to this witness. The objection of learned counsel is that in thus admitting this testimony it curtailed the rights of the accused on cross-examination and that he had no opportunity to rebut the testimony.
[4] We will begin by stating that the right of rebuttal must be limited to rebuttal testimony. This court has gone further than it is necessary to go in this case, for it has decided that the rule is not a' cast-iron and inflexible rule; it yields in its application to the sound discretion of the trial judge, whose ruling will not be disturbed unless the case is an extreme one. State v. Haab, 105 La. 230, 29 South. 725.
The court relies on the statement of the trial judge as' to the fact that the testimony was rebuttal. State v. Smith, 48 La. Ann. 535, 19 South. 452; State v. Moreau, 50 La. Ann. 8, 22 South. 966; State v. Hebert, 39 La. Ann. 319, 1 South. 872.
The following — pertinent here — -has ample support:
“The fact that the defendant had closed his case, the state recalled some of its witnesses and interrogated them as to matters which might have been relevantly and properly introduced as part of the state’s evidence in chief, does not necessarily affix to that testimony the character of new and direct ‘cumulative’ evidence in chief. The accused is not without remedy; he can ask the court for instructions.” State v. Boswell, 45 La. Ann. 1158, 14 South. 79.
The state may be taken unawares as the case develops and thereby render it necessary to show a different state of pertinent facts from those developed by the defense. State v. Fourchy, 51 La. Ann. 228, 25 South. 109.
As, for instance, the state in rebuttal may prove that the testimony of the accused that the deceased was armed with a knife is not true. State v. Madison, 47 La. Ann. 30, 16 South. 566. And upon this authority it was possible to prove that certain parts of the testimony of the accused about the affray were not true. See, also, on the same subject, State v. Brown, 111 La. 173, 35 South. 501; State v. Johnson, 35 La. Ann. 969; State v. Claire, 41 La. Ann. 1067, 6 South. 806.
The defendants urged that one of the state’s witnesses, Andrew Jenkins, and all *500 ■of the defendants’ witnesses testified that Riley was present from the beginning to the ■end of the shooting; that he instigated it; that his testimony should have been given by the state before he (the district attorney) closed his case; that the state could not at that time claim his evidence to be rebuttal and thus take advantage of the defense and prevent them from offering any testimony contrary to that offered by him; that the witness Riley denied that he had done as stated by the witnesses named; that the defense, not being able to contradict him in surrebuttal, he (Riley) being a witness in rebuttal for the state, were deprived of their right to cross-examine the witnesses to prove that Riley swore falsely; that in rebuttal they had no such right; it would have been ■different if this witness had testified in chief; they would then have had a strong defense.
The whole evidence showed that he (Riley) had gone to his brother’s (the deceased’s) home after the fight at the fair and woke him up and told him that it had to be settled that night and had gone to the home of Bellard, where the fighting took place, and used violent and opprobrious language there and awakened Aristide Bellard from a sound sleep, and that he (this witness, Riley) was really the sole cause of the difficulty which resulted in the death of his brother.
This objection was overruled by the district court for the following reasons, to wit: The said question was not allowed by the ■court for the reason that said question was rebuttal testimony in order that said witness might explain his testimony given in chief.
From the foregoing, it appears that this evidence was not offered for the first time in rebuttal.
We will not, from this on, copy the questions made part of the bills of exceptions, which gave able counsel grounds for their arguments. It would be monotonous to copy these questions, although we have considered them carefully. Suffice it to state that it is said that a woman whose name is Burns testified while the state was introducing evidence in chief to a statement made to her by the defendant Aristide Bellard a short time after the shooting, away from the scene of the difficulty, that he wished to put an end to Nolton Guillary. Aristide Bellard was asked if he had made such a statement, which he denied. Going hack for a moment, it is in place to state that the two brothers, one of whom was killed, and the two defendants, brothers also, quarreled and had a fight. There was a gathering of colored people, as we understand, at a fair. It was there that the quarreling began and the fight followed. There was a cessation of hostilities ; the participants separated; the defendant brothers went to a cabin, and the one who did the shooting had gone to bed. Soon thereafter he was awakened by Riley, the witness, who left the cabin where he had gone and came to that of the defendants. The fighting was renewed. It was then that there was a shooting and Nolton Guillary received a fatal shot. This was about 2 o’clock in the morning. How long after the shooting the deceased died, we are not informed, although we infer that it was a short time thereafter. It was a short time after that that Aristide Bellard, as testified to by the Burns woman, as before stated, said, in substance, that he wished to kill the one who had just been shot.
[3] The district attorney asked Aristide if it was true that he had made such a statement, which he denied. This, it is argued, is sufficient ground to set aside the verdict and order a new trial. We have not arrived at that conclusion; there was nothing of a surprise in this testimony, and, even though not included in the denial made by one of the defendants as to the untruthfulness of what was said while the testimony of the state in chief was being taken, we are not of the *502 opinion that it was new and objectionable testimony. One of the grounds taken in regard to this testimony is that it was not at nil referred to while examining the'witness Aristide in chief. It was not new evidence. The issue of fact was raised in the examination in chief.
“A witness may be examined on cross-examination as to statements be has made to others with reference to the matters as to which he has testified, especially when the alleged statements as to which he questioned were inconsistent with his testimony.” Cyc. vol. 40, 2485 and 2487.
“Another mode of discrediting a witness is by showing (either through cross-examination or by other witnesses) that the witness has at another time stated the opposite of what he now states.” Greenleaf on Evidence, vol. 1 (16th Ed.) § 461.
But the witness’ attention must be called to his contradiction in the testimony. Id. par. 462.
The facts relating to the difficulty at the fair and at the home — the statement made by the woman Burns as before mentioned — are all parts of the same difficulty and are all testimony pertinent to matter of the killing.
Defendant also insists that nothing was proven in regard to the quarrel at the fair and that all the testimony was limited to the quarreling at the cabin and the shooting there. We have found several references in the bill of exceptions to the fighting at the fair there, and from that point of view facts preceding the shooting and killing may to some extent all be considered in the same light and all part of the same difficulty.
We gather, after having read all these bills of exceptions, that the judge of the district court considered the whole case as one continuous quarrel with occasional fighting. No objection seems to have been taken to considering it as one quarrel and one fight.
Now in all this it happens that very soon after the end of the shooting it is said that Aristide uttered the words that we have before referred to under circumstances we think that sufficiently justified the trial judge in permitting Aristide to be questioned in regard to. what he had said in his madness or unreasonable anger as we infer.
We made reference above to the excited condition and madness of the defendant Aristide, for the reason that the district attorney asked this witness on cross-examination if he was sane when he made the remark about the man who had just been shot, that he intended to finish him. To this question of the district attorney, a bill of exceptions was taken, which we pass without comment, as it has no merit whatever.
Another question was that relating to defendant’s attempt to shoot while at the fallía short time before the shooting which resulted in the killing); in answer to the question, the witness denied that he had made any such attempt. This was brought out while the witness was examined in chief, and we mention it to state that it was proper for the district attorney to question him in regard to this shooting when he was cross-examined. The question was especially referred to in another bill of exceptions which we have passed upon.
But, the important question in this case is whether an iron-clad rule shall be enforced and no question allowed at all to a witness unless he has been examined in regard to the facts sought to be proven while on direct examination, or shall the trial judge in his discretion permit a question to be propounded if the evidence sought is in rebuttal or if it be sought to test the memory of a witness.
We have had to review jurisprudence upon the subject in this state; the question has a number of times been before us for decision.
In one of the decisions it was indicated that the common law of England should be closely followed. State v. Denis, 19 La. Ann. 120. Prior decisions upon the subject were overruled in no uncertain tones, in no uncertain words. State v. Duncan, 8 Rob. 562; and in State v. Parker, 7 La. Ann. 84.
Judge Porter was the organ of the court *504 in the last-cited casé, a wise and conservative judge. He referred to the act of 1805 and stated that changes had taken place since adopting the common law. (He might have added that “little, if anything,” is known of the rule of cross-examination as it was administered in 1805.) The two cases, as before stated, were overruled. The question came up again in 113 La. 959, 37 South. 890, State v. Lyons.
The court was not influenced by the extreme views expressed in 19 La. Ann., the Denis Case, before cited. In the last-cited case, the Lyons Case, the issues were forcibly presented and the case was of great importance. The court held unanimously that the matter was within the discretion of the district judge and declined to set aside the verdict. In the last-cited case, the defendant was interrogated in regard to an arrest made long anterior to the homicide. Defendant’s counsel objected on the ground that it was new evidence. This court held directly that the issue was within the discretion of the trial judge and upheld the ruling.
In State v. Oden, 130 La. 598, 58 South. 351, the question was again presented and considered by the court. To some extent in that case, the tendency was to return to the Denis Case to the extent of holding that the common-law rule of England, preceding the year 1805, should be enforced. But the court added that for the purpose of impeachment and to test the memory of a witness, the witness might be examined, although the subject had not been specially dealt upon in examining the witness in chief.
[6] The trial judge is unquestionably clothed with sufficient authority to direct a cross-examination on the lines before mentioned without sanctioning the thought that this examination should be extended beyond all reasonable limit or should be extended at all except strictly for the purpose of rebuttal. There is no question but that the state should offer her evidence in chief; it is fair that she should and that she should not reserve any evidence that might have the effect of unduly entrapping an unsuspecting witness. The district attorney did not withhold evidence, as we understand the testimony in chief was all introduced, while on cross-examination for the purpose of rebuttal it became necessary to introduce other evidence directly connected with the case. Everything connected with the cross-examination was for the purpose of rebuttal. The trial judge so states. State v. Moreau, 50 La. Ann. 8, 22 South. 966.
In this ease, just cited, the question of rebuttal and impeachment was considered. The court placed reliance upon the declaration of the trial judge that it was in rebuttal. The facts in the cited case above are very similar in State v. Smith, 48 La. Ann. 535, 19 South. 452. The facts in the pending case are similar to those in the case of State v. Boswell, 45 La. Ann. 1158, 14 South. 79.
The court said in the Smith Case, above, in substance, it was evident that the intention was to test the credibility of the witness. That was the intention, as we take it, in the pending case. See, also State v. Hebert, 39 La. Ann. 319, 1 South. 872.
The courts of other states have decided similarily.
The Supreme Court of Massachusetts, whose views are always greatly respected, held that a witness may be cross-examined by the other party upon the whole case, and the limit of said cross-examination is within the discretion of the presiding judge, in the case of Commonwealth v. Morgan, 107 Mass. 199. This goes far beyond anything this court has decided. The cross-examination of a witness is not confined to matters inquired of in chief in Mask v. State, 32 Miss. 405.
The accused have been triecl according to *506 the common law as administered in this state, and they have been found guilty; it only remains for us to affirm the sentence.
The verdict and judgment are affirmed.
MONROE, J., dissents.
PROVO STY, J., takes no part, not having heard argument.