ROGERS', J.
 

 Defendant was indicted for the crime of murder. He was tried and found guilty without capital punishment, and duly sentenced. Because the court below erred in admitting certain objectionable testimony, this court, on appeal, set the verdict and sentence aside and remanded the case. See State v. Webb, 156 La. 952, 101 So. 338.
 

 On his second trial under said indictment defendant was found guilty of manslaughter and sentenced accordingly, and again has appealed to this court.
 

 The record contains six bills of exception, five reserved during the progress of the trial, and the sixth reserved to the refusal of a motion for a new trial.
 

 Counsel for defendant have not argued bills Nos. 1, 4, and 6. However, we have examined these bills, and, finding them to be without merit, will not make further reference thereto.
 

 Bill No. 2 was taken .to the refusal of the court to sustain the challenge for cause of a tales juror named J. S. Copeland, because the name as drawn from the jury box, and as ■ set forth on the list submitted to counsel for defense and prosecution, appeared as J. S'. Copen. The juror was excused upon a peremptory challenge by the defense.
 

 From an examination of the talesman on his voir dire it appears that he was the person intended to be summoned, and that he was actually summoned as J. S. Copeland; that he was the only person of that name living in the ward whence he was summoned, and that his name was frequently misspelled, There was no evidence adduced showing the existence of any person named J. S. Copen.
 

 The ruling^ of the court was correct. It does not appear that defendant was in any wise misled by the misspelling of the name of the talesman, and it is not claimed that defendant did not know the party summoned as well by the name as written as he would have known him if it had been correctly set forth.
 

 Bill No. 3 shows that the wife of the deceased, testifying as a witness for the prosecution, identified a certain knife as the property of the defendant. On cross-examination she was asked if she did not hear the defendant state at the former trial of the case that this was his knife, and that he had loaned it to her husband, just before the difficulty came up, at her husband’s request. Upon objection by counsel for the state, the witness was not permitted to answer, and the testimony was excluded, on the ground that it was hearsay of a self-serving statement. This ruling of the eourt’was the basis of the bill.
 

 Counsel for defendant contend that the
 
 *817
 
 question was proper, and that they were entitled to. an answer, to show, not only the feeling of the witness, hut, in addition thereto, her sources of information.
 

 It is not clear to us how the feeling of the witness could, have been shown by any ■ answer she might have made to the interrogatory, and it was irrelevant for that purpose. Nor was the method adopted the proper one to ascertain how the witness obtained the information that the knife in question was the .property of the defendant. If counsel for defendant desired to be informed in that regard, he should have propounded the direct question to the witness. Besides, the true facts could have been ascertained by placing the defendant on the stand and interrogating him in regard thereto. The defendant, however, did not take the stand, and the effect of an affirmative answer to the question as framed would have been to place before the jury the self-serving declaration of defendant, without the necessity of subjecting him to the ordeal of cross-examination. We-find' no error in the action of the court in excluding the testimony.
 

 Bill No. 5 was reserved to the refusal of the judge to give the following special charge:
 

 “That if they find that the deceased had previously threatened the accused with his life, or some great bodily harm, and that subsequently they met without design, and from the motions and actions of the deceased the accused was induced to believe, and had reasonable grounds to believe, that the deceased was about to carry his threats into execution, the accused had the right to defend himself, even by killing his assailant if necessary to protect himself, and the jury should acquit, although it should afterward appear that there was no such design on the part of the assailant.”
 

 The requested charge was refused, mainly on the ground that it was not clear, there being nothing in the statement showing knowledge in the defendant of threats against him, and that it was properly covered by the general charge. We think this is substantially so. The general charge, which was in writing, is a full and complete statement of the law governing homicides. The charge reads in part as follows:
 

 “Self-defense is the right which a person has who has been suddenly or violently attacked to defend himself from the infliction of bodily harm or to prevent his life being taken.
 

 “In order for the plea of self-defense to avail an accused, and to excuse or justify a killing by him, he must have been free from fault in bringing on the difficulty; he must not have been an aggressor in bringing on the difficulty, and must not have gone willingly into the fight, unless he later withdraws in good faith from the difficulty, and makes that fact known to his adversary. Too, he must have retreated, if reasonably possible to do so, if to retreat would not have increased his danger or apparent danger, or if his danger would have been lessened thereby. There is no duty to retreat, if to do so would increase one’s danger.
 

 “You consider the case from the standpoint of the accused, but the circumstances surrounding the killing must have been such as to warrant the belief in the mind of a reasonable and ordinary man that his life was in imminent danger, or that great bodily harm was about to be done him.
 

 “I charge you that the burden rests on the state to prove that the homicide was felonious, which fact it must establish beyond a reasonable doubt. If the homicide was in self-defense, it was not felonious, but justifiable; and hence the state must prove its feloniousness beyond a reasonable doubt. Any. such doubt as to whether it was done so entitles the accused to an acquittal.
 

 “Where one acts in self-defense, as herein outlined, he may do so even to the taking of life, and even though it later appear there was no real danger, but merely an apparent danger.”
 

 For the reasons assigned, the verdict and sentence appealed from are affirmed.