OVEETON, J.
 

 Hidalgo and Trotter were jointly informed against for robbery. Hidalgo was tried alone, and his codefendant, Trotter, was a witness against him. Hidalgo was convicted and sentenced to the penitentiary, and now prosecutes the present appeal.
 

 After Hidalgo had closed his case, the state placed. Walter Bertrand on the stand in rebuttal, and asked him whether on the night of the omnibus robbery, which was the robbery in question, he saw Hidalgo and Trotter together. This question was objected to on the ground that the evidence sought to be elicited was not rebuttal evidence, but should have been introduced in chief. The objection was overruled, and the witness answered that he did see them together on the night before the robbery, and, in response to other questions, said that he saw them together between 11:30 and 12 o’clock on that occasion, during which time the omnibus, the driver of which was robbed the next night, passed, making its last trip for the night, and that as it passed either Hidalgo or Trotter asked the other what time it was. Also, after Hidalgo had closed his case, the state called his alleged accomplice, S. E. Trotter, to the stand and asked him whether he had an agreement with Hidalgo to the effect that one should plead guilty to one charge, and the other, to another charge, referring to two charges for the larceny of automobiles, and also what agreement, if any, was had as to the third charge, referring to the present charge of robbery. The evidence, which it was the purpose of this question to elicit, was also ob
 
 *631
 
 jeeted to by defendant on the ground that it was not evidence in rebuttal. The objection was overruled. The witness answered the question by saying that, after he and Hidalgo had broken jail and were rearrested, an agreement was entered into between them to the effect that, if they were acquitted of the crime of robbery, one would plead guilty to one automobile theft, and the other would plead guilty to the other automobile theft.
 

 The trial judge says that in neither of the foregoing instances was the evidence elicited rebuttal evidence, but that he offered Hidalgo an opportunity to rebut that evidence. In view of the opportunity thus offered Hidalgo, we think" that he has no, just cause of complaint. He was not placed in any worse position than he would have been had the evidence been offered in chief, for the right to rebut it was reserved to him. The rules governing such offerings as those here made and objected to are as follows:
 

 “ ‘While orderly procedure would suggest that the State should put its whole case in evidence in chief, and reserve only its rebuttal testimony to meet the case of the prisoner, yet there is no fixed or inflexible rule which would require a trial judge to reject testimony in rebuttal which more properly should have been presented in the opening of the case. This is a matter resting in the sound discretion of the court below, and, unless the case should disclose an abuse of this discretion, it will not be interfered with by this [appellate] court.’ Moore v. State, 96 Tenn. 209, 38 S. W. 1046.
 

 “ ‘The proper rule for the exercise of this discretion is that material testimony should not be excluded because offered by the plaintiff after defendant has rested, although not in rebuttal, unless it has been kept back by trick and for the purpose of deceiving the defendant ' and affecting his cáse injuriously.’ Thompson on Trials, § 346.”
 

 State v. Johnson, 141 La. 775, 784, 75 So. 678, 681.
 

 The effect of the rulings of the trial judge was to reopen the case. It was within his discretion to reopen it, provided that, in doing so, he gave the accused a fair opportunity to rebut the new evidence offered. State v. Smith, 120 La. 530, 45 So. 415; State v. Bellard, 132 La. 491, 508, 61 So. 537.
 

 In this ease it does not appear that the evidence offered by the state, and here complained of, was deliberately withheld, until the time for rebuttal came, for the purpose of deceiving the defendant or for the purpose of taking an unfair advantage of him, nor does it appear that he was placed in any worse position than he would have been placed in' if the evidence had been offered in chief. Therefore, defendant has no cause to complain.
 

 It also appears that, during the trial of the case, the district attorney, who was prosecuting it through his assistant, requested the judge to issue a bench warrant for the arrest of one of defendant’s witnesses, who testified in the case, on the charge of perjury, committed therein, and that the judge ordered the minute clerk to issue the warrant. No one heard the request, except the judge, to whom it was made in low tone, and no one knew of the action of the court on it, except the minute clerk, who, in a low tone, was directed to issue the warrant. The order for the issuance of the warrant was entered on the minutes. On the next morning, at the opening of court, the minutes of the preceding day were read aloud by the minute clerk, .including the minute entry showing the arrest for perjury, while -the jury was in the jury box. Neither defendant nor his counsel heard the minute entry read, nor did either hear the request, made on the preceding day by the district attorney to the court, and therefore raised no objection on those occasions to either the reading of the entry in the presence of the jury or to the making of the request and the action of the court thereon. But defendant has taken advantage of the reading
 
 *633
 
 of the entry in the presence of the jury in a motion for a new trial. His contention is that by the reading of the entry by the clerk in open court the jury was informed of the opinion of the judge as to the credibility of the witness. Evidence was heard on the motion for a new trial. The only juror sworn was the foreman. He testified that, so far as he knew, none of the other jurors knew anything concerning the arrest of the witness until after the trial; that he, himself, had no positive knowledge of it until after the verdict had been returned; and we glean from his evidence that the only knowledge he had of the occurrence was that, when the entry was read, he heard something about a warrant in connection with the witness’ name, but did not hear the full wording of the entry.
 

 Our jurisprudence is conflicting as to whether the issuing of a bench warrant on the motion of the district attorney, in the pres-' ence of the jury, for the arrest of a witness for perjury, who has just testified, is fatal to the verdict, as constituting an expression of opinion by the trial judge, in the presence'of the jury, as to the credibility of the witness. In State v. Strado, 38 La. Ann. 562, this court ruled that the issuing of such a warrant, in the presence of the jury, on the motion of the district attorney, was not fatal to the verdict. On the other hand, it was said, in State v. Williams, 124 La. 779, 50 So. 711, that the arrest of a witness for perjury, at the instance of the state, in the presence and to the knowledge of the jury, would constitute sufficient cause to annul the verdict, though in that case the verdict was not annulled, because the court found that it was not reasonably certain that the jury had any knowledge of the arrest.
 

 In the present case, it is unnecessary to decide whether such an arrest in the presence and to the knowledge of.the jury is fatal. We may assume, for the purposes of this case, that it would be fatal; but, after so assuming, we fail to find the necessary facts to which to apply the legal principle assumed and invoked. The jury, it is reasonably certain, did not hear, and could not have heard, the request made by the district attorney and the order directed to the minute clerk to issue the warrant, nor does defendant urge in his motion for a new trial that the jury obtained knowledge of the issuance of the warrant from the proceedings then had, but from the reading of the minutes by the clerk the next morning, in open court, prior to their approval by 'the judge. The only evidence tending to show that any of the jurors obtained knowledge of the issuance of the warrant from the reading of the minutes is the evidence of the foreman, who testified that he heard something read touching a warrant in connection with the náme of the witness arrested, but what that something was the foreman apparently did not know, as he did not hear the full minute entry. It is reasonably certain that he did not know prior to verdict why the warrant was issued. As to the remainder of the jurors, it is most unlikely that they knew anything concerning the issuance of the warrant prior to verdict, for the foreman testified that so far as he was aware they did not. Had any of them known anything about the issuance of the warrant, and why it was issued, it is not unlikely that some mention would have been made of the fact in the jury room, for the witness arrested was an important witness for the defense, and the foreman would have known by such mention that other jurors had knowledge that the warrant was issued. The vague and uncertain impression gained by the foreman of the jury from the reading of the minutes in open court, as it is the practice to do, before their approval by the judge, and the likelihood that the remaining jurors knew nothing of the issuance of the warrant, do not make out such a case as to justify, upon any hypothesis, the disturbing of the verdict.
 

 
 *635
 
 Defendant also complains that the trial judge, on the hearing of the motion for a new trial, refused to permit him to show that
 

 O.J. Gill was acting as minute clerk at the time the minutes were read, containing the entry complained of. The court had the right to notice judicially without proof who was minute clerk at the time, and that the minutes, containing the entry, were read in open court, while the jury was present. The judge states in his per curiam that Gill was minute clerk, and read the minute entry complained of, in the presence of the jury. Moreover, after the court had refused to permit defendant to make the proof, the evidence- was admitted to complete the record, and, judging from the per curiam of the judge, was considered by him in passing on the motion for a new trial.
 

 Eor the reasons assigned, the verdict and the sentence appealed from are affirmed.