16 So.2d 65

**STATE v. ISERINGHAUSEN.**

No. 37234.

Nov. 8, 1943.

Voorhies & Labbe, of Lafayette, for defendant and appellant.

Eugene Stanley, Atty. Gen., and Niels F. Hertz, Sp. Asst. Atty. Gen., N. S. Hoffpauir, Dist. Atty., of Crowley, and Ed. Meaux, Asst. Dist. Atty., of Lafayette, for the State.

PONDER, Justice.

The defendant, Bernard Iseringhausen, was charged in a bill of information with the crime of manslaughter. Upon trial, he was convicted of the crime of negligent homicide and sentenced to serve three years in the penitentiary.

Eight bills of exception were taken to the rulings of the trial judge during the trial.

Bill of Exception No. 1 is leveled at the overruling of the defendant's motion to quash and set aside the array, the general venire and petit jury list.

The first ground urged in the motion is to the effect that the jury commission assembled in the basement of the court house and drew the jury in violation of the mandatory provisions of Article 179 of

the Code of Criminal Procedure which requires the jury commission to meet for such purpose at the office of the clerk of court.

The note of testimony in the record shows that the clerk's office is composed of two rooms, a room on the first floor of the building and another in the basement. The upper room is used to dispatch the business of the office, and the lower room or basement is used to store records which are inactive or seldom used. An open stairway connects the two rooms, making them easily accessible for anyone wishing to witness the drawing. Both rooms are under the charge and supervision of the clerk of court.

In our opinion, the basement room is part of the clerk's office. This Court has held in the case of State v. Green, 43 La. Ann. 402, 9 So. 42, that a vault was part of the clerk's office. See also State v. Ardoin, 157 La. 1099, 103 So. 336; State v. Dreher, 166 La. 924, 118 So. 85.

The second ground urged to quash the array is that the proces verbal of the jury commission did not include the full complement of the names of three hundred persons in that nine of the names listed were erroneous and not the names of persons living in the parish.

The only evidence offered to support this contention is a certificate of the registrar of voters to the effect that he had searched his records and had failed to find any names registered in the precise spelling used in listing these nine names in the proces verbal.

■ It is well established that the legality of an array of a venire is presumed and any attack to the contrary must be proven. State v. Dallao, 187 La. 392, 175 So. 4, and cases therein cited.

■■ A person does not have to be a registered voter in order to be a qualified juror. Article 172, Code of Criminal Procedure. The fact that the registrar's list does not contain the name of the juror does not prove that there is no such person in the parish qualified to do jury duty. Moreover, the certificate of the registrar of voters significantly states that the registrar did not find any registration in the precise spelling as that used in the nine names listed in the proces verbal.

■ Absolute accuracy in spelling is not required in legal documents or proceedings if the name as spelled sounds the same to the ear. State v. Restiva, 149 La. 683, 90 So. 23; State v. Foster, 164 La. 813, 114 So. 696.

In the case of State v. Webb, 157 La. 814, 103 So. 164, wherein a prospective juror by the name of J. S. Copeland was challenged for cause on the ground that the name as drawn from the jury box and as set forth on the list submitted to counsel for the defense and prosecution appeared as J. S. Copen, this court upheld the refusal of the lower court to sustain the challenge for cause based on the ground that the prospective juror's name was misspelled. This court stated therein to the effect that the ruling was correct in the absence of any showing that the defendant was misled by the misspelling of the name of the pro-

spective juror and any claim that the defendant did not know the party summoned as well by the name as written as he would have known him if it had been correctly set forth.

█ Furthermore, the defendant does not contend that any fraud was practiced or some great wrong committed that would work irreparable injury. Article 203, Code of Criminal Procedure.

█ The third ground urged in the defendant's motion to quash the array is to the effect that one of the jury commissioners was a deputy sheriff.

The only testimony in the record in support of this contention is that the jury commissioner qualified as a deputy sheriff in 1939, approximately four years before the trial of this case. There is no evidence to show that he was a deputy sheriff at the time the jury list was prepared. Moreover, it is well settled that the acts of an officer de facto in so far as they affect the public are valid. State v. Breedlove, 199 La. 965, 7 So.2d 221, and cases cited therein; State v. Broussard, 202 La. 458, 12 So.2d 218.

█ The fourth ground urged by the defendant to set aside the array is to the effect that the proces verbal does not disclose what names were taken off the list and out of the box.

From our appreciation of the record, it does not appear that any names were taken off the list or out of the box; but conceding that such was the case, the fact that the jury commission permitted a few persons' names to remain on the jury list, such per-

sons being exempt or disqualified, is not sufficient ground to set aside the venire unless fraud has been practiced or great wrong committed which would work irreparable injury to the defendant. Article 203, Code of Criminal Procedure; State v. Gremillion, 137 La. 291, 68 So. 615.

█ The fifth ground urged by the defendant in his motion to quash is to the effect that the proces verbal is not in the handwriting of the clerk of court.

The defendant bases his contention on the ground that although the clerk of court did testify that the names were written by his chief deputy clerk under his direction and control, yet he could not say that it was done under his supervision.

Prior to the passage of Act No. 204 of 1924, there was considerable dispute as to the powers of a chief deputy clerk of court, but this act fixes those duties. Section 9 of the Act confers on the chief deputy clerk of court all the powers that are vested in the clerk of court except those specially prohibited, whether the clerk be absent or not. Section 10 of the Act empowers deputy clerks to perform the duties of the clerk of court except such judicial powers granted pursuant to sec. 37 of Article 7 of the Constitution of 1921, which belong to the clerk alone, and provides further that the chief deputy shall in no case be authorized to bond any conservatory writ. Section 37 of Article 7 of the Constitution of 1921 provides that the Legislature may empower the clerks of the district courts to enter defaults; to render and sign judgments by default or by confession.

As we take it, the chief deputy clerk can perform all the legal duties of the clerk except entering defaults, rendering and signing judgments by default or by confession or bonding any conservatory writ. The chief deputy clerk of court was fully vested with the authority to perform the duty complained of herein.

Bill of Exception No. 2 was taken to the ruling of the trial court permitting the trial of the motion to set aside the array to be reopened and the district attorney to introduce evidence showing the jury commissioner had been duly notified to attend the meeting of the jury commission.

Counsel for the defendant takes the position that it was an abuse of the discretion of the trial court to reopen the trial of the motion and permit the district attorney to offer evidence that should have been introduced in chief.

It was within the discretion of the trial judge to reopen the hearing of the motion provided he gave the defendant a fair opportunity to rebut the new evidence. State v. Rose, 33 La.Ann. 932; State v. Cavanaugh, 52 La.Ann. 1251, 27 So. 704; State v. Douglas, 116 La. 524, 40 So. 860; State v. Smith, 120 La. 530, 45 So. 415; State v. Bellard, 132 La. 491, 61 So. 537; State v. Hidalgo, 167 La. 628, 120 So. 31; State v. Sliman, 167 La. 982, 120 So. 619.

The trial court did not deny the defendant the right to rebut the evidence offered by the State after the hearing was reopened. Under such circumstances, there was no abuse of the discretion vested in the trial judge.

The defendant in his brief has abandoned Bill of Exception No. 3, and now urges the matters complained of therein in his bill of exception to the overruling of the motion for a bill of particulars.

Bill of Exception No. 4 is leveled at the sufficiency of the district attorney's answer to a bill of particulars. It is contended that the bill of particulars did not set up specifically the nature of the offense charged.

In his motion for a bill of particulars, the defendant asked to be informed of the following:

(a) Whether the defendant had a specific or a general criminal intent to kill or to inflict great bodily harm as defined by the New Criminal Code.

(b) Whether the defendant killed and slayed Theresa Iseringhausen by the grossly negligent handling of a gun.

(c) What physical act of the accused, willed by him, caused the death of the decedent.

(d) Whether the defendant so killed Theresa Iseringhausen while in a standing or in a seated position after deliberately aiming the weapon at her.

The district attorney in answer to the motion set forth that the defendant was charged with the crime of manslaughter; that he was prosecuting the defendant for such crime under sec. 1 of Article 31 of the Criminal Code, that is, Act No. 43 of 1942; and that the killing of Theresa Iseringhausen was done with a shotgun.

The defendant objected to the answer on the ground that the information furnished

by the district attorney was insufficient, which objection was overruled by the trial court.

The bill of information charged that the defendant "did unlawfully, wilfully and feloniously kill and slay one Theresa Iseringhausen."

Article 235 of the Code of Criminal Procedure sets forth a simplified form of indictment that may be used and provides that any other form authorized by any law of this State may also be used.

█ The bill of information as drawn meets the requirements of the simplified form as well as the form previously recognized by the jurisprudence of this State. The fact that the words, "wilfully and feloniously," were used did not vitiate the bill of information. It may be treated as surplusage. State v. Hudgens, 189 La. 128, 179 So. 57; State v. Vinzant, 200 La. 301, 7 So. 2d 917. Also see Article 240 of the Code of Criminal Procedure.

Prior to the adoption of the Code of Criminal Procedure in the crime of manslaughter, it was sufficient to allege in the indictment or bill of information "that the accused did feloniously kill and slay the deceased."

█ The essential ingredient of a crime must be charged in the indictment or information informing the accused of the nature and cause of the accusation against him. Article 1, sec. 10 of the Constitution of 1921.

The bill of information is not attacked on the ground that it did not meet these constitutional requirements.

█ The granting or refusing of a bill of particulars is a matter which addresses itself to the sound discretion of the trial judge. It is sufficient to charge the accused in the language of the statute, and he would need no further information to put him on his guard in the preparation of his defense. State v. Augusta, 199 La. 896, 7 So.2d 177.

█ It would appear from the motion for a bill of particulars that counsel for the defendant was endeavoring to place the State in the position of abandoning either one or the other of the responsive verdicts that might be rendered under the charge. Under the charge of manslaughter, a verdict of manslaughter or a verdict of negligent homicide is responsive. A defendant charged in an indictment or information with a crime but convicted of a lesser crime is sufficiently informed of the nature of the accusation against him when the major crime has been properly alleged in the indictment. State v. Ritchie, 172 La. 942, 136 So. 11.

█ Bill of Exception No. 5 is leveled at the overruling of an objection to the accused's being brought to trial without legal arraignment.

Counsel for the defendant applied for a bill of particulars which was denied. The defendant was arraigned and his case set for trial. Subsequent to the arraignment, the district attorney asked the trial judge to reverse his ruling and to permit the State to give the information set forth in the State's answer to the motion for a bill of particulars.

Counsel for the defendant is under the impression that the accused should have been rearraigned after this information was received, or, in other words, that the granting of a bill of particulars had the effect of setting aside the arraignment.

■ A motion for a bill of particulars is not one of those motions that has the effect of setting aside an arraignment. An accused party has not the absolute right to withdraw his plea, but the granting of this privilege is within the sound discretion of the trial judge. State v. Shropulas, 164 La. 940, 114 So. 844.

Moreover, Article 635 of the Code of Criminal Procedure Act No. 31 of 1926, § 1, provides as follows: "In all criminal cases arising under state laws and parish ordinances the defendant shall be entitled to a formal arraignment, which shall consist in reading to said defendant the indictment, information or affidavit and the ascertaining of his plea; provided that in no case shall more than one arraignment be necessary."

The defendant in his brief does not urge Bill of Exception No. 6 for the reason that the grounds upon which he based his motion for a mistrial have been fully urged in Bill of Exception No. 1.

■ Bill of Exception No. 7 was taken to the overruling of a motion in arrest of judgment based on the grounds that the verdict of negligent homicide is not responsive to a charge of manslaughter and that the defendant was illegally convicted

by a jury of twelve instead of a jury of five.

There is no necessity to go into a discussion of this question for the reason that we have fully discussed it in the case of State v. Stanford, and determined that it was without merit. See the opinion this day handed down by Justice Higgins in the case of State v. Stanford, 204 La. 439, 15 So.2d 817.

Bill of Exception No. 8 was taken to the overruling of a motion for a new trial.

The questions presented have been fully disposed of in the defendant's previous bills of exception and his counsel concedes that the allegation that the verdict is contrary to the law and the evidence presents no basis for reversal.

For the reasons assigned, the conviction and sentence are affirmed.