MOISE, Justice.
 

 The defendant Allan Nichols, was indicted, tried and convicted of “the crime of Manslaughter” and was sentenced to serve 4 years and 10 months in the penitentiary. From this conviction and sentence he appeals.
 

 The record reveals that the indictment was returned against the defendant on May 21, 1949. He was arraigned on May 25, 1949, and entered a plea of “not guilty”, which he later withdrew for the purpose of filing a motion to quash the indictment and to quash and set aside the petit jury venire. The case was fixed for trial on June 15, 1949, the term of court having opened on June 6, 1949. On June 14, 1949, the court gave the defendant permission to withdraw his plea of “not guilty” so that he might file a motion to quash the indictment. This motion was taken up, tried and overruled on June 15, 1949, and immediately thereafter the accused was placed on trial and found guilty as charged and sentenced.
 

 The motion to quash the indictment and set aside the petit jury venire is based on six grounds:
 

 First, that the indictment charging the accused “* * * does not set forth any crime or the violation of any criminal statute of this state”. We have held in the case of State v. Iseringhausen, 204 La. 593, 16 So.2d 65, 69, that such an indictment does set forth the crime of manslaughter : “* * * It is sufficient to charge the accused in the language of the statute, and he would need no further information to put him on his guard in the preparation of his defense.”
 

 Second, that “* * * Article 31 of the Criminal Code, covering the crime of manslaughter * * * is unconstitutional in that the crime intended to be denounced thereby is inadequately and improperly defined”. To our mind, Article 31 of the Criminal Code, defining the crime of manslaughter, makes clearly manifest the offense intended to be defined.
 

 Third, that Article 235 of the Code of Criminal Procedure, as amended, authorizing the short form indictment, is unconstitutional, in that the crime of manslaughter merely charges the defendant with “unlawful killing”, and that the accused is not sufficiently informed of the nature of the charge against him, as required by the Constitution of the State.
 
 *627
 
 The weight of our jurisprudence upholds the constitutionality of Article 235 of the Code of Criminal Procedure and the short form of indictment set forth therein.
 

 In State v. Capaci, 179 La. 462, 154 So. 419, 423, in considering Articles 235 and 248 of the Code of Criminal Procedure, this Court held that these articles dealt. “* * * exclusively with the confection of indictments, a matter of pleading, and do not change the substantive law as to the essential elements of the crime charged.”
 

 In State v. White, 172 La. 1045, 136 So. 47, we stated: “The indictment, as confected, does not, in our opinion, deprive defendant of due process of law, nor deny to him his constitutional right to be informed of the nature and cause of the accusation against him.”
 

 Finally, our Court has completely put at rest, and the jurisprudence is now settled (although some may contend not theoretically correct) that in the codal article providing the short form of indictment the provision to the effect that the district attorney may be required to furnish a bill of particulars setting forth more specifically the nature of the offense charged amply protects the defendant’s constitutional guarantee that he shall be fully informed of the nature and character of the accusation. State v. Chanet, 209 La. 410, 24 So.2d 670; State v. Davis, 208 La. 954, 23 So.2d 801, and State v. Iseringhausen, supra.
 

 The fourth, fifth and sixth grounds urged, relating respectively to the impanelling of the Grand Jury, the alleged “systematic exclusion” of the negro race on the Grand Jury service and Petit Jury service are, in relation to cases of this, nature, like Banquo’s Ghost, continually popping up. Nevertheless, these grounds, have merit.
 

 It is alleged in the motion to quash that there were no Grand Jurors who were Negroes in the regular panel of twenty names from which this particular Grand Jury, was drawn. It is further alleged that no negro Grand Juror has served in the Parish of Avoyelles in the last 40 years, and that in the entire three hundred names comprising the General Venire, there were only two or three names which were the names of Negroes on the en-' tire panel. The same charge is made as against the Petit ‘Jury which tried this defendant — that in the Petit Jury names drawn, and in fact, in the entire 300 names comprising the General Venire, there were only two or three names included therein of Negroes, and in the Petit Jury for the week during which this defendant was tried, there was only one name of a Negro included thereon and he could not have been accepted because of his relation with the deceased by marriage.
 

 Evidence was taken in which the Sheriff of Avoyelles Parish, the Clerk of Court of the Parish and several members of the Jury Commission were called to testify.
 
 *629
 
 The Clerk of Court, who is Ex-officio member of the Jury Commission, testified that he had not placed the names of any Negroes in the Venire and he gave his personal feeling as being of the opinion that Negroes should not serve on juries. He further stated that he had been in public life for some 15 years or more and had never known of a Negro to serve either on a Grand or a Petit Jury. Two members of the Jury Commission were called by the defendant. Both of these testified that they had not placed the names of any Negroes in the Jury Venire. One of these Commissioners testified that he did not know of any Negro jurors at his end of the ward who were qualified to serve.
 

 In connection with the evidence taken by the defendant, exhibits from the 16th Census of the United States of 1940 were produced showing a compilation of the Negro population of the State of Louisiana and the educational status of this population. From this document, which was admitted as evidence, it is ■ contended by defendant that- there were some 10,556 Negroes in the Parish of Avoyelles in a total population of 39,256. Of course, percentages are not complete criteria for determining' these questions but the defendant in this case alleged that there were only about 12% of the Negro population in Avoyelles Parish who were illiterate and incompetent to serve and there is proof in the record dealing with those of the ages from 25 years and over, and that possibly only about 25% thereof are illiterate. On the trial of this particular issue, the defendant further introduced the testimony of the Sheriff of the Parish of Avoyelles, who testified that he had closely examined the names of the entire three hundred names comprising the General Venire and to his personal knowledge there were not more than three names therein which were names of members of the Negro race.
 

 The State offered no evidence to contradict the allegations of the defendant, and these allegations are substantiated by the Sheriff of the Parish, who testified that no Negroes had served as Grand Jurors in the Parish of Avoyelles in the past forty years, nor had it ever been known that one had served as a Petit Juror in any case, and that on a few occasions which were known to him one or two Negroes had been placed upon the venire, but either had not been called or •had not served.
 

 This statement of facts tracks the first case of Pierre v. State, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757, where it was held that the evidence was sufficient to show that there had been a deliberate and systematic exclusion of Negroes from jury service because of race, in violation of the laws and the Constitutions of Louisiana and the United States, since in that case there were only two Negroes included .in the.Jury list of 300, and only one Negro
 
 *631
 
 had served as a Juror in more than forty years in the Parish with a large Negro population. The case was reversed and remanded to oúr Court on a writ of certiorari granted by the United States Supreme Court. Following the decision of the United States Supreme Court, the defendant was again tried and convicted and he again appealed. We found that since (in this second case) the authorities had in some measure corrected some of the complaints made during the original trial, and there had been placed in the Venire of 300 names some 52 Negroes, and 5 Negroes were on the Grand Jury panel of 20 and 2 Negroes on the Grand Jury of 12, and further, one Negro actually sat on the jury that tried and convicted the defendant, there had been no “systematic exclusion” of members of the Negro race from the Grand or Petit Juries; and we therefore affirmed the conviction. 198 La. 619, 3 So.2d 895. This second case also went to the United States Supreme Court, where the application for a writ of certiorari was denied. 314 U.S. 676, 62 S.Ct. 186, 86 L.Ed. 541.
 

 The State relying on Article 202 of the Louisiana Code of Criminal Procedure contends that the motion to quash the indictment and set aside the petit jury venire comes too late. Clearly, the State is in error in this contention for Article 202 of the Code specifically provides: “All objections to the manner of selecting or drawing any juror or jury or to any defect or irregularity that can be pleaded against any array or venire must be filed, pleaded, heard or urged before the expiration of the third judicial day of the term for which said jury shall have been drawn, or before entering upon the trial of the case if it be begun sooner; otherwise, all such objections shall be considered as waived and shall not afterwards be urged or heard.”
 

 The sequence of events in this case clearly shows that the motion was timely filed within the ■ contemplation of this Article. The indictment was returned on May 21, 1949, the defendant was arraigned on May 25, 1949, and the case was fixed for trial on June 15, 1949. The term of court began on June 6, 1949 and on the 14th day of June, 1949, defendant was granted permission to withdraw the plea of not guilty for the purpose of filing a motion to quash the indictment, and, on the next day the motion was overruled and the case called for trial. The Grand Jury adjourned its term, after the defendant was convicted. See State v. Wilson, 204 La. 24, 27, 14 So.2d 873.
 

 Having reached the above conclusion, it is not necessary for us to discuss any of the other bills of exception reserved during the course of the trial.
 

 With a disclosure of circumstances in the present case similar to these in the first Pierre case, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757, namely, the exclusion (whether systematic or inadvertent) from
 
 *633
 
 both Grand and Petit Jury service of members of the Negro race, we are duty bound to arrive at the same decision as announced by the United States Supreme Court in its findings in the first Pierre case supra. There, we find both precedent and authority. We have no doubt that the jury selected in the instant case gave to the accused a fair trial and that the State officials were in good faith and well-intending, but our United States Supreme Court is a judicial planet whose orbit draws into its vortex the findings of all State courts involving all federal constitutional questions which must be obeyed in order to maintain the law in its majesty of final decision.
 

 For these reasons, the conviction and sentence are annulled and set aside, the indictment is quashed and the accused is ordered discharged.